

# ARKANSAS COURT OF APPEALS

DIVISION III
No. CV-14-214

| | |
|---|---|
| CALVIN McHENRY | **Opinion Delivered** September 3, 2014 |
| APPELLANT | |
| | APPEAL FROM THE POINSETT |
| V. | COUNTY CIRCUIT COURT |
| | [NO. JV-11-62] |
| | |
| ARKANSAS DEPARTMENT OF | HONORABLE RALPH WILSON, JR., |
| HUMAN SERVICES and MINOR | JUDGE |
| CHILDREN | |
| APPELLEES | AFFIRMED |

**DAVID M. GLOVER, Judge**

Calvin McHenry appeals from the December 17, 2013 order terminating reunification services for him in connection with his three minor children: A.M., a female (D.O.B. 7-26-2004), C.M., a male (D.O.B. 6-29-2005), and B.M., a female (D.O.B. 2-3-2009). The order did not terminate his parental rights, but, noting that the termination of reunification services often leads to the termination of parental rights, a Rule 54(b) certification was included in the order pursuant to Rule 6-9(a)(1)(B) of the Rules of the Arkansas Supreme Court and Court of Appeals, certifying that the December 17 order constituted "entry of final judgment as to the finding that the minor children have been subjected to aggravated circumstances in that there is little likelihood that further services to the family will result in successful reunification with Calvin McHenry." Calvin raises two interrelated points of appeal, challenging the sufficiency of the evidence supporting the trial court's decision: 1) there was not sufficient

evidence to prove the statutory ground for termination of services relied on by the trial court, and 2) the trial court erred when it denied his second oral motion to dismiss because the Department had not met its burden of proof. We affirm.

*Procedural Background*

Calvin and Suzann McHenry are the birth parents of the three minor children involved in this matter. The children were initially removed and placed in the custody of the paternal grandparents, Albert and Joyce McHenry, because Suzann burned A.M. "with [a] cigarette or cigarettes over the Memorial Day weekend in May of 2009." Reunification was the case goal for the parents, but guardianship of the children continued with the grandparents. The grandparents were eventually made permanent guardians by order dated January 12, 2010, Suzann was ordered to have no contact with the children, and the court case was closed.

On July 11, 2011, the Arkansas Department of Human Services, (DHS) filed a new petition for emergency custody and dependency-neglect. The supporting affidavit basically reported facts supporting environmental neglect: roaches all over the place; a strong smell of urine and feces; trash everywhere; a grandparent's report that one of the children was responsible for spreading her own feces all over the floor; that one of the three bedrooms was not being used because the grandmother's sister and brother-in-law were shooting at them and the children; and that the other two bedrooms could not be entered because they were "filled all the way to the door entrance." The children were taken into emergency custody and subsequently adjudicated dependent-neglected. The Court ordered reunification with the grandparents as the case goal, but the children remained in DHS custody. The goal of the

case was eventually changed to adoption, and DHS was authorized to pursue termination of parental rights by order dated June 13, 2012, but not filed until November 16, 2012. Following a December 5, 2012 review hearing, the trial court ordered DHS to refile the petition for termination of parental rights, and the children remained in DHS custody.

On May 15, 2013, the trial court held a hearing for further disposition and review. In its June 7, 2013 order, the trial court reported that Suzann McHenry's parental rights had been terminated on May 15, 2013, and an appeal had not yet been filed; that the grandparents' guardianship of the children had been terminated by order entered on May 15, 2013; that return of custody to the remaining parent, Calvin McHenry, was contrary to the children's welfare; and that the goal of the case was to be adoption. The order went on to provide, however, that DHS was to develop an appropriate case plan for Calvin and to conduct a staffing for him. Calvin was ordered to attend parenting classes, view the "ticking-clock" video, remain drug free and undergo random tests, obtain and maintain stable employment, obtain and maintain stable and safe housing, and obtain a psychological assessment and follow its recommendations.

On July 22, 2013, another hearing was held for further disposition and review. The court noted that time for Suzann to appeal the termination of her parental rights had run; that the grandparents' appeal was pending; and that DHS had filed in open court on that date a motion to terminate reunification services and a notice of intent to use child hearsay. The children remained in DHS custody. The trial court ordered DHS to develop an appropriate case plan for Calvin and to conduct a staffing for him within thirty days; to obtain a certified

copy of the full record of Calvin's criminal conviction and submit it to the court; to refer Calvin to CSE; and to obtain a criminal background check and a child-maltreatment registry check on Calvin. The court ordered Calvin to comply with the case plan and to do all of the previously ordered things if he had not already done so. Calvin's visitation was suspended, and a hearing was set for September 25, 2013, on DHS's motion for no-reunification services.

On October 9 and November 20, 2013, a hearing on the DHS motion to terminate reunification services was held. On December 17, 2013, the trial court entered its order terminating reunification services. It is from this order that Calvin brings this appeal. The order granted only in part DHS's motion to terminate services, but it found that doing so was in the children's best interest and explained the rationale. The order provides in pertinent part:

a. The Court finds by clear and convincing evidence that the children have been subjected to aggravated circumstances in that there is little likelihood that services to the family will result in successful reunification. Ark. Code Ann. § 9-27-365(c)(2)(iv). The Court adopts in full Paragraph 3(c) of the Department's Motion to Terminate Reunification Services, with the exception of the last sentence. Specifically, the juveniles have been out of the custody of the father, Calvin McHenry, since approximately 2009, when the juveniles were removed from the household of Calvin and Suzann McHenry due to the physical abuse of the mother, Suzann McHenry and adjudicated Dependent/Neglected. As part of that case the juveniles were placed in the custody of the grandparents Albert and Joyce McHenry. The Juveniles were removed from the custody of Albert and Joyce McHenry on July 7, 2011, after allegations of environmental neglect, and were again adjudicated dependent/neglected. Although he was not explicitly included in the case plan, during the 21 month duration of that case, Calvin McHenry consistently attended hearings but did not request custody or make any significant attempts to regain custody of the juveniles up to the point where the Court terminated the rights of the custodians, Albert and Joyce McHenry, and the mother Suzann McHenry.

4

SLIP OPINION

The trial court granted Calvin's motion to dismiss as to the allegations contained in Paragraph 3(b)(i) and 3(b)(ii) of DHS's motion to terminate services, which pertained, respectively, to sexual abuse and the fact that Calvin was a registered sex offender, and denied DHS's motion to terminate services on those grounds. The trial court ordered the immediate cessation of all reunification services and found that the children were in need of DHS services, that return of custody to Calvin was contrary to their welfare, and that continuation of custody in DHS was in the children's best interest and necessary to the protection of their health and safety. The goal of the case remained adoption.

*Summary of Testimony from Hearing on Termination of Services*

Tosha Dixon, a family-service worker, testified at the hearing. She explained that "until approximately this summer," Calvin had never specifically contacted DHS to request services; she did not believe he was sent notices for staffings before she was the case worker; she did send him staffing notices; and if he was present at the court hearings, he had the opportunity to hear how the case was going. She testified about the services offered and completed by Calvin, and also his compliance with things he was ordered to do.

She testified the children were doing well in their placements and the foster parents had expressed an intent to adopt. She explained the circumstances under which the children were removed from Suzann's and Calvin's custody in 2009, which involved Suzann's physical abuse of A.M., and stated the children had been out of Calvin's custody since July 7, 2009—almost four years—and during that time, Calvin had not made any significant attempts to request custody of his children. She expressed her opinion it was not likely further reunification

5

services would succeed in returning custody to Calvin, and she based that belief in part on the fact that he relied on his parents to basically do what was best for his children; did not voice to DHS that he wanted to get his children back or ask what he needed to do to get them back; and she believed he simply turned over legal guardianship to his parents. She recommended the children remain in DHS custody and adoption be pursued.

On cross-examination, she acknowledged that previous case plans had not addressed Calvin as the father until she became the case worker; he was not provided any services other than visitation; but "he had ample opportunity to stand up in Court while he was here." She acknowledged that "once I put him in the case plans and started providing the services to the Court order, he became very compliant. He's done everything I've asked him to do." She also acknowledged the psychological evaluation recommended that DCFS continue to work with Calvin. She acknowledged the investigations regarding Calvin for sexual abuse of A.M. had been concluded, and the allegations were unsubstantiated. She acknowledged Calvin had attended all of the hearings in the case.

Gracie Gonner, licensed psychological examiner, testified about her treatment of A.M. Her testimony was merely proffered, was never heard by the trial court, and the trial court basically ruled in favor of Calvin on the sexual-abuse/inappropriate-comments grounds for termination of services. Consequently, it is not necessary for purposes of this appeal to set out her proffered testimony.

Calvin testified he had attended the hearings; he realized his parents were not complying with the case plan and that the course of the hearings was taking a turn; but he was

6

not allowed an equal opportunity to express his own opinions at the hearings because the cases did not pertain to him. He explained his status as a registered sex offender, but because the trial court did not base its decision on that status, it is unnecessary to recount that testimony here.

Calvin's attorney moved to dismiss. The trial court deferred ruling on the motion and continued the hearing until issues regarding the proffered testimony about the alleged sexual abuse could be addressed and decided.

The hearing reconvened on November 20, 2013. At the outset, the trial court reviewed the circumstances under which the earlier hearing had been continued and the decisions that had been made in the interim. Briefly, the court explained it had sustained Calvin's objection to Gonner's testimony about what A.M. had told her because there was no hearsay exception that covered it, but the court had given DHS a window either to have A.M. testify live or to have DHS try to establish that A.M. was unavailable under Rule 804(b)(6) due to infirmity or incompetence or some other reason. DHS opted to have A.M. testify and requested a more informal setting, which the trial court accommodated. A.M. testified, but because her testimony played no role in the ultimate decision, we do not include it here.

Calvin's attorney then renewed his motion to dismiss DHS's motion to terminate reunification services, contending DHS had not met its burden because "the only testimony they have is that of the child, A.M., and that . . . testimony [was] not credible." The trial court heard arguments from all parties on the motion to dismiss. The trial court's ultimate



decision has previously been set out in detail.



*Points of Appeal*

I.

Both of Calvin's points of appeal challenge the sufficiency of the evidence. For his first point, he contends that the trial court erred in finding there was sufficient evidence to terminate reunification services to him on the basis there was little likelihood further services would result in successful reunification. We disagree.

Arkansas Code Annotated section 9-27-365(c) (Supp. 2013) provides:

> (c) An order terminating reunification services on a party and ending the Department of Human Services' duty to provide services to a party shall be based on a finding of clear and convincing evidence that:
>
> (1) The termination of reunification services is in the child's best interest; and
>
> (2) One (1) or more of the following grounds exist:
>
> (A) A circuit court has determined that the parent has subjected the child to aggravated circumstances that include:
>
> . . . .
>
> (iv) A determination by a circuit judge that there is little likelihood that services to the family will result in successful reunification[.]

Calvin challenges only the trial court's aggravated-circumstances finding, not the best-interest finding. Specifically, the trial court found:

> [T]he juveniles have been out of the custody of the father, Calvin McHenry, since approximately 2009, when the juveniles were removed from the household of Calvin and Suzann McHenry due to the physical abuse of the mother, Suzann McHenry and adjudicated Dependent/Neglected. As part of that case the juveniles were placed in the custody of the grandparents Albert and Joyce McHenry. The Juveniles were removed from the custody of Albert and Joyce McHenry on July 7, 2011 after

allegations of environmental neglect, and were again adjudicated dependent/neglected. Although he was not explicitly included in the case plan, during the 21 month duration of that case, Calvin McHenry consistently attended hearings but did not request custody or make any significant attempts to regain custody of the juveniles up to the point where the Court terminated the rights of the custodians, Albert and Joyce McHenry, and the mother Suzann McHenry.

An action to terminate reunification services must be based on a finding of aggravated circumstances by clear and convincing evidence. Ark. Code Ann. § 9-27-325(h)(2)(C) (Supp. 2013). In reviewing the trial court's evaluation of the evidence, we will not reverse unless the court's finding of clear and convincing evidence is clearly erroneous. *Chase v. Arkansas Dep't of Human Servs.*, 86 Ark. App. 237, 184 S.W.3d 453 (2004). In resolving the clearly erroneous question, we must give due regard to the opportunity of the trial court to judge the credibility of witnesses, and in matters involving the welfare of young children, we give great weight to the trial judge's personal observations. *Id.*

Calvin acknowledges that the children were placed with his parents in 2009 due to their mother's physical abuse, and then removed from the grandparents' custody in 2011 (because of environmental neglect in the grandparents' home), with the goal being changed to adoption at the permanency-planning hearing on June 13, 2012. He argues, however, that DHS was never ordered to develop an appropriate case plan for him or to conduct a case-plan staffing for him or to provide reunification services for him until June 7, 2013. He also notes that although he attended every hearing, he was not appointed counsel and he did not have any professional assistance to represent his interests until July 22, 2013.

He further argues that just four months after being ordered to do certain things, the case worker testified he had completed all of the things he had been ordered to do and had

9

SLIP OPINION

complied with everything DHS had asked of him. Even so, he notes his visitation was suspended pending an investigation on an allegation that was subsequently found to be unsubstantiated. He refutes the assertion he never requested custody of the children and never took the opportunity to stand up in court by arguing he was never allowed an equal opportunity to express his own opinions and was not advised of any services DHS could offer him at that time. He claims he did attempt to speak up in court and ask for custody but was denied the chance to speak because the case did not pertain to him, only his parents, who were the legal guardians at the time.

He argues that he is a truck driver by trade and that he could not be expected to know how to pursue or express his rights, but that he appeared at every hearing and attended visitation with his children. He states that his lack of "standing up in court" or requesting custody of his children was misconstrued and cited as a deficiency of such significance that it was the primary reason cited for terminating reunification services. He contends that it was his cooperation with DHS and the case plan and his deference to their authority and the court's authority that resulted in his lack of aggressive action.

He finally contends case law does not provide an example where custodians were offered services for almost two years while a parent was excluded, and then that parent is joined into the case plan just days before the goal of the case is changed to adoption. He urges that by terminating reunification services just four months into the parent's inclusion in those services is the same as fast-tracking termination of his parental rights.

While some of Calvin's concerns are well-taken, we are simply not convinced the trial

10

court clearly erred in concluding further reunification services would not result in a successful reunification. The children had been out of his care and custody for more than four years, and, with respect to each of the three children, that period of time was substantial. Moreover, while DHS was not without fault in its handling of Calvin's role in this case, we cannot absolve him of responsibility. There was a period of time after the first case had been closed and before the children were taken from his parents when Calvin could have pursued avenues to regain custody of his children, but he did not—content for his parents to care for them. Once the case resulting in this appeal began, Calvin was not new to the system. He acknowledged not only attending the hearings but also being aware his parents were not following the case plan and the status of things was changing. Even if we were to accept his position that he tried to speak up in court and express his views, that does not explain why he did not pursue possible avenues for the return of his children with DHS personnel outside of court. Thus, while we agree he cannot be held accountable for knowing all of the "ins and outs" of DHS proceedings, it is clear he could have demonstrated a stronger interest in shifting custody to himself and finding out what he needed to do to make that happen. His attempts to engage in that effort came too late.

## II.

For his remaining point of appeal, Calvin contends the trial court erred in denying his motion to dismiss DHS's motion to terminate reunification services. He contends the trial court erred when it did not act on his oral motion to dismiss after A.M.'s testimony; that Gonner's proffered testimony concerning what she had been told by A.M. had been ruled

hearsay and the hearing reconvened to hear testimony from the child; and that the trial court subsequently ruled the child's testimony was not credible. Calvin's argument might have merit if the trial court had granted DHS's motion to terminate services based on the motion's assertions of aggravated circumstances in the form of alleged sexual abuse by Calvin and/or his status as a registered sex offender, but the trial court did not. Rather, it specifically *granted* Calvin's motion for a directed verdict with respect to those allegations, explaining:

> All right, based on the evidence heard and considered back on October 9, 2013, and based on the evidence heard and considered today, judging the credibility of witnesses, reasonable inferences and other factors the Court's required to consider in exercising the Court's discretion, the Court *partially grants Mr. Dunigan's motion for a directed verdict as to Paragraphs (3)(b)(1) and (3)(b)(2)(1).* [Paragraph 3(b) of DHS's motion to terminate reunification services alleged aggravated circumstances based on Calvin's alleged sexual abuse and Calvin's status as a registered sex offender.]

> The Court really can't reconcile the testimony of this eight-year-old regarding the time frames and what happened, you know, it very well could have happened but I just can't find it even by a preponderance of the evidence and the Department's required to prove no reunification services by clear and convincing evidence. Likewise, even if Mr. McHenry is a registered sex offender he explained the circumstances in that case, with that explanation in place the Court doesn't find that, just being a registered sex offender under Arkansas law, in this particular circumstance, precludes Mr. McHenry from not having reunification services to his children, on that specific ground.

(Emphasis added.) The trial court then went on to deny Calvin's motion for directed verdict regarding the little-likelihood-of-success ground asserted in Paragraph 3(c) of DHS's motion to terminate services. Even so, the trial court specifically rejected the last sentence of Paragraph 3, subsection (c), explaining, "I'm looking at your Subsection C, aggravated circumstances, little likelihood, and the last sentence says, 'Moreover, since Calvin McHenry has been included in the case plan he has not been compliant with that case plan.' Well, Ms.

Tosha Dixon's testimony directly controverted that, I mean, according to Ms. Dixon's testimony he's complied with about everything it sounds like." The trial court then specifically eliminated the allegation that Calvin was not compliant with the case plan. The trial court's decision to grant DHS's motion to terminate services was thus based solely on its finding that there was little likelihood that further services would result in a successful reunification, and, even with respect to that ground for termination of services, the trial court rejected the allegation that Calvin had not been compliant with the case plan. Accordingly, the trial court ruled in Calvin's favor on the challenged items concerning allegations of sexual abuse, his status as a registered sex offender, and his compliance with the case plan. So, as a separate challenge to the sufficiency of the evidence, we find no merit in this point of appeal.

Affirmed.

WALMSLEY and VAUGHT, JJ., agree.

*Elizabeth J. Finocchi*, Arkansas Public Defender Commission, for appellant.

*Tabitha B. McNulty*, County Legal Operations; and *Chrestman Group, PLLC*, by: *Keith L. Chrestman*, for appellees.