

# ARKANSAS COURT OF APPEALS

DIVISION II

No. CV–17–433

| | |
|---|---|
| SHERRY RICKMAN<br>APPELLANT<br><br>V.<br><br>ARKANSAS DEPARTMENT OF HUMAN SERVICES AND MINOR CHILD<br>APPELLEES | **Opinion Delivered:** November 15, 2017<br><br>APPEAL FROM THE CRITTENDEN COUNTY CIRCUIT COURT<br>[NO. 18JV-14-110]<br><br>HONORABLE RALPH WILSON, JR., JUDGE<br><br>AFFIRMED |

## RITA W. GRUBER, Chief Judge

Sherry Rickman appeals from the Crittenden County Circuit Court's order granting the Arkansas Department of Human Services' motion to cease reunification services.[1] On appeal, Rickman argues that the evidence was insufficient to support the circuit court's finding that she subjected her child to aggravated circumstances. We affirm.

Although DHS had been involved with the family since 2008, this case began on May 13, 2014, when the Department of Human Services (DHS) assumed emergency custody of K.R. (born August 23, 2007) based on Rickman's illegal drug use. Rickman tested positive for drugs and was wearing a morphine patch that had not been prescribed to

---

[1]The order did not terminate her parental rights but included an Arkansas Rule of Civil Procedure 54(b) certification noting that a termination hearing had been set and that the grounds for termination would be, in whole or in part, the aggravated-circumstances finding from the "No Reunification Services Order." The court found that there was "no just reason to delay an immediate appeal . . . to ensure the termination of parental rights will not be based on an aggravated-circumstances finding that may be reversed on appeal."

her. The court adjudicated K.R. dependent-neglected after an August 12, 2014, hearing during which the parties stipulated to dependency-neglect based on "inadequate supervision due to the mother's use of morphine without a prescription." The goal was set as "return to mother/permanent-relative custody/adoption." The case was continued several times for good cause, and the circuit court retained this goal in a review order entered on January 27, 2015. The court also found that DHS had made reasonable efforts to provide family services and finalize the case plan. The court specifically mentioned medical services, PACE evaluation, parent-child visits, home visits, and drug screens. The court ordered Rickman to submit to random drug screens and to remain drug free.

The circuit court entered a permanency-planning order on June 18, 2015, and set the goal of the case as authorizing a plan to place K.R. in the custody of a parent, guardian, or custodian. The court found that Rickman had complied with the case plan, completed parenting classes and outpatient treatment, participated in mental-health counseling, maintained adequate income, visited with K.R., and submitted to random drug screens. The court also found that Rickman had tested positive for amphetamines but had provided a prescription. The court ordered DHS to provide a referral for a drug-and-alcohol assessment within 10 days, hold a staffing within 45 days, complete a home study of the grandmother's home, and conduct an inspection of Rickman's home. The case was scheduled for an additional hearing to be held on August 24, 2015, but was again continued several times.

On May 12, 2016, DHS filed a petition for termination of parental rights, which the circuit court denied in an order entered on August 9, 2016, after a hearing held on June 14,

2016. In a subsequent permanency-planning order entered on September 20, 2016, the court continued the goal of reunification with Rickman with a concurrent goal of adoption and termination of parental rights. The court found Rickman to be in compliance with the case plan except for being "positive for amphetamines twice since the last hearing."

On November 17, 2016, DHS filed a motion for no reunification services, alleging that there was little likelihood of successful reunification. On November 28, 2016, Rickman filed a motion in limine to exclude any evidence at the no-reunification hearing regarding facts or issues that arose on or before June 14, 2016, the date of the termination hearing, as barred under the doctrine of res judicata. The court granted Rickman's motion in part, stating that, at the hearing, it would only consider admissible, relevant evidence that occurred after June 14, 2016, but that it would also consider prior findings of the court made over the entire course of the case.

The no-reunification hearing was held on February 9, 2017. The court entered an order on March 14, 2017, finding that it was not possible to return K.R. to Rickman. The court found by clear and convincing evidence that there was little likelihood that further services to the family would result in successful reunification and that it was in K.R.'s best interest to terminate further reunification services. The court found that K.R. "desperately need[ed] stability and continuity." Specifically, the court found that there had been a lack of stability in Rickman's home "with significant ongoing issues with clutter and trash, which the court finds would be hazardous to a young child, and not safe living conditions." The court also found a lack of stability in Rickman's relationship with Johnny Underwood, "in which there have been at least two instances of domestic violence since June 14, 2016, [and]

excessive alcohol abuse." The court noted Rickman's statements to her therapist that it was an "emotionally and physically abusive relationship." Although the court recognized that Underwood had moved out of Rickman's home, it noted that he continued to visit and contact Rickman two or three times a week and had spent the night in her home the night before the hearing. The court also found that Rickman had consistently tested positive for amphetamines since the June 14, 2016, hearing; had admitted having an addiction to Adderall; and had attempted to obtain Adderall by means other than from her medical providers. Finally, the court stated that Rickman's psychological evaluator said that there were mental-health issues that would prevent return of K.R. and that Rickman had "borderline functioning," suffered from "major depressive disorder," and had substance-abuse issues, anxiety, and depression.

An action to terminate reunification services must be based on a finding by clear and convincing evidence that the termination of services is in the child's best interest and that one or more of the grounds listed in the statute exists. Ark. Code Ann. § 9-27-325(c) (Repl. 2015). In this case, the circuit court based its decision on the ground of aggravated circumstances: specifically, that there is little likelihood that services to Rickman will result in successful reunification. In reviewing the circuit court's evaluation of the evidence, we will not reverse unless the court's finding of clear and convincing evidence is clearly erroneous. *Chase v. Ark. Dep't of Human Servs.*, 86 Ark. App. 237, 184 S.W.3d 453 (2004). In resolving the clearly erroneous question, we must give due regard to the opportunity of the circuit court to judge the credibility of witnesses, and in matters involving the welfare of young children, we give great weight to the circuit court's personal

observations. *McHenry v. Ark. Dep't of Human Servs.*, 2014 Ark. App. 443, at 9, 439 S.W.3d 724, 729.

Rickman's sole argument on appeal is that there was insufficient evidence to support the court's finding that there was little likelihood that services to the family would result in successful reunification. She points specifically to DHS's inability to reconcile the positive drug screens with the constantly changing prescription medications Rickman was taking and argues that DHS's concern that Rickman was using drugs was pure speculation. Evidence was introduced that drug screens from September 8, 2016; November 5, 2016; November 22, 2016; and February 6, 2017, were positive for amphetamines. Rickman was unavailable for testing on January 24, 2017. A drug screen on January 30, 2017, was positive for "benzo," and a drug screen from December 16, 2016, less than two months before the hearing, was positive for amphetamines, oxycodone, and oxymorphone. Rickman claims that DHS was concerned about the positive tests for amphetamines but was unable to explain what constituted an amphetamine or what medications would cause a test to be positive for amphetamines. She presented no evidence, however, to justify these positive drug screens.

With regard to the court's additional issue of concern, clutter and trash in her home, Rickman argues that DHS did not provide homemaker services to help her. Testimony and photos of Rickman's home introduced into evidence demonstrated that clutter and filth had been ongoing problems in her home. Demetria Willis, a DHS family service worker assigned to the case, testified that often when she visited, the house was not clean, the porch and the yard were not clean, and there were beer cans, clutter, trash, and clothes everywhere. Ms. Willis admitted that sometimes the house was clean. On cross-examination, Ms. Willis stated

5

that, to her knowledge, DHS had not offered homemaker services to Rickman, but she testified that those services involve teaching someone how to clean. She testified that it helps fix the problem if the problem is not understanding how to clean but it does not fix the problem of someone's unwillingness to keep her home clean. Here, Rickman clearly knew how to clean as she demonstrated with photos she introduced of her clean home. Further, she reported at her psychological evaluation that she enjoyed "working in the yard and cleaning house." Finally, the court made numerous findings throughout the case that DHS had made reasonable efforts to provide family services to Rickman and to finalize a permanent plan for K.R. Rickman never challenged those findings. DHS offered services for over three years. Our review of the evidence does not demonstrate that the court's finding that the home could be hazardous to a young child and did not provide safe living conditions is clearly erroneous.

Rickman also complains that the court found that instability was demonstrated by her continued relationship with Johnny Underwood but that DHS neither offered services to deal with those concerns nor proved that he was a danger while not living in her home. Rickman admitted that Underwood had physically and emotionally abused her. Underwood testified that, although he no longer lived with Rickman, he and Rickman continued to see each other several times a week and that he had spent the night before the no-reunification hearing at Rickman's home. Rickman received numerous services throughout the three-year history of the case, including mental-health evaluations and counseling. The court's finding of instability regarding this relationship is not clearly erroneous.

SLIP OPINION

At the outset of its order, the circuit court expressed concern that, despite the case's three-year history, the court still had not found it possible to return K.R. to her mother. Numerous orders demonstrated that DHS had made reasonable efforts to provide family services during this time. The court found lack of stability demonstrated by the significant ongoing issues with trash and clutter and with Rickman's relationship with Underwood in spite of his excessive alcohol abuse and her admission that he had physically and emotionally abused her. In addition, the court found that Rickman had consistently tested positive for amphetamines, had admitted having an addiction to Adderall, and had attempted to get Adderall by means other than from her medical providers. Finally, the court recognized Rickman's psychological evaluator's opinion regarding her mental-health issues. We hold that the circuit court's finding of aggravated circumstances in this case is not clearly erroneous.

Affirmed.

VIRDEN and HARRISON, JJ., agree.

*Tabitha McNulty*, Arkansas Public Defender Commission, for appellant.

*Mary Goff*, Office of Chief Counsel, for appellee.

*Chrestman Group, PLLC*, by: *Keith L. Chrestman*, attorney ad litem for minor children.