Cite as 2022 Ark. App. 478

# ARKANSAS COURT OF APPEALS
## DIVISION II
No. CV-22-247

| | |
|---|---|
| STANLEY THOMPSON<br><br>APPELLANT<br><br><br>V.<br><br><br><br>ARKANSAS DEPARTMENT OF HUMAN SERVICES AND MINOR CHILD<br><br>APPELLEES | Opinion Delivered November 30, 2022<br><br>APPEAL FROM THE SALINE COUNTY CIRCUIT COURT [NO. 63JV-20-43]<br><br><br>HONORABLE ROBERT HERZFELD, JUDGE<br><br>AFFIRMED |

**RAYMOND R. ABRAMSON, Judge**

Stanley Thompson appeals the Saline County Circuit Court's no-reunification-services and termination-of-parental-rights (TPR) orders. On appeal, Thompson argues the following three points: (1) the Arkansas Department of Human Services (DHS) did not prove its motion for no-reunification services; (2) DHS did not prove by clear and convincing evidence the statutory grounds; and (3) termination of parental rights was not in the child's best interest. His arguments center on his assertion that DHS failed to present evidence that it offered specific services to Thompson to assist with his MC's (minor child's) fetal alcohol spectrum disorder ("FASD").  We disagree and affirm.

On March 5, 2020, DHS exercised a seventy-two-hour hold on MC after Thompson was arrested for the physical abuse of M.C.'s mother, Christina McAtee, and both parents

tested positive for illegal drug use. This was the third time that MC had been placed in the foster-care system over the last seven years.

On March 9, DHS filed a petition for dependency-neglect alleging that MC was at substantial risk of serious harm as a result of neglect and parental unfitness. The attached affidavit alleged that McAfee admitted using cocaine and tested positive for both cocaine and THC. In an interview at the Saline County jail following his arrest, Thompson denied having attacked McAtee. He also tested positive for THC, cocaine, and benzodiazepines. MC reported that his father made his mother "bleed" because his father thought his mother was going to do harmful things to him, including "kick [MC] outside." MC witnessed Thompson punch McAtee repeatedly.

The circuit court entered an ex parte order for emergency custody on March 10, finding that DHS had been involved with the family since December 12, 2013, the day MC was born. The court further found that, despite reasonable services provided by DHS, Thompson's and McAtee's substance use seriously affects their ability to supervise, protect, or care for MC.

On March 12, the circuit court held a probable-cause hearing and found that probable cause existed for the emergency order to remain in place. Additionally, the circuit court ordered the parents to comply with the case plan and court orders. On April 21, the circuit court entered an agreed adjudication and disposition order. In this order, the circuit court found MC dependent-neglected on the grounds of neglect and parental unfitness due to the parents' illegal drug use. The adjudication order also found MC was subjected to

2

domestic violence in the home. Additionally, the circuit court ordered the parents to comply with the case plan and court orders.

On July 27, the circuit court held a review hearing. At this hearing, the circuit court continued the goal of reunification and found that DHS had made reasonable efforts by offering the following services: foster care, medical services, transportation, counseling, parenting classes, a drug-and-alcohol assessment, drug treatment, drug screens, visitation, psychological evaluation, anger management, and case management. Additionally, the circuit court found that Thompson was in partial compliance with the case plan and court orders and found that his drug screen on June 17, 2020, did not register a proper temperature. Further, the circuit court ordered the parents to comply with the case plan and court orders, cooperate with DHS and CASA, demonstrate stability, participate in family therapy and anger management, and comply with the recommendations of the drug-and-alcohol assessment.

On October 26, the circuit court held another review hearing wherein it continued the goal of reunification and found that DHS had made reasonable efforts. Additionally, the circuit court found that Thompson had been visiting MC, that he was attending counseling, that he completed his drug-and-alcohol assessment, that he was testing negative on drug screens, and that he was participating in parenting and anger-management classes. Further, the circuit court ordered Thompson to maintain contact with DHS, comply with the case plan, maintain stable housing, submit to a hair-follicle test, and to obtain his drivers' license and insurance or to obtain alternate transportation.

On January 25, 2021, the circuit court held another review hearing. The circuit court continued the goal of reunification and found that DHS had made reasonable efforts by offering the following services: home visits, transportation, medical services, foster care, daycare, counseling, drug screens, a drug-and-alcohol assessment, anger-management classes, parenting classes, and inpatient and outpatient drug treatment. The circuit court also found that Thompson had made limited progress with the case plan. Specifically, it found that he was participating in visits and individual and family counseling; however, it found that the family counselor, Liz Freeze, believed that there had not been a significant enough change in Thompson. Additionally, the court found that Thompson did not have stable housing, and it ordered Thompson to follow the case plan and court orders and to abstain from substance and alcohol use forty-eight hours before visits.

On February 26, the circuit court held a permanency-planning hearing. At this hearing, the circuit court continued the goal of reunification and found that DHS had made reasonable efforts. Additionally, it found that Thompson had been participating in visitation as well as individual and family counseling and outpatient treatment. Further, it ordered Thompson to comply with the case plan and court orders and to maintain stable housing and transportation.

On June 14, the circuit court held a fifteen-month review hearing. At this hearing, the circuit court continued the goal of reunification and found that DHS had made reasonable efforts. Additionally, it found that Thompson was in individual and family counseling; that he was attending visits; and that he was in outpatient drug treatment. It also

found that Thompson was facing criminal charges, and the court noted concern regarding Thompson's housing situation and emotional stability. The court ordered Thompson to comply with the case plan and follow court orders.

On September 17, DHS filed a motion to terminate reunification services, and a hearing was held over the course of two days—October 11 and 18. The court heard testimony by both Thompson and McAtee and the following witnesses: Dapple Ault, Hot Spring County Division of Children and Family Services caseworker; Ceressa Owens, Saline County Division of Children and Family Services program assistant; Toni Hansberry, Saline County Division of Children and Family Services supervisor; Deanna Walderns, foster parent; Liz Freeze, LCSW at the Counseling Clinic; and Elizabeth Cleveland, Ph.D., CCC-SLP, assistant professor at the University of Central Arkansas and codirector of the Specialty Diagnostic Resource Center. The circuit court subsequently entered an order granting DHS's petition to terminate reunification services on the aggravated-circumstances ground, specifically finding that "offering training regarding FASD to Mr. Thompson is not appropriate due to his failure to benefit from more basic services."

On October 19, DHS filed a petition for termination of parental rights. The circuit court held a termination hearing on January 19, 2022. After considering the evidence, the court terminated Thompson's parental rights under multiple grounds, including aggravated circumstances. In its January 27 order, the court reiterated its findings from the no-reunification order:

That the parent, Stanley Thompson, has subjected the juvenile to aggravated circumstances in that a determination has been made by a court of competent jurisdiction that there is little likelihood that services to the family will result in successful reunification. Specifically, this Court found on October 18, 2021 by clear and convincing evidence that there is little likelihood that continued services to the family will result in successful reunification and thus found that the juvenile had been subjected to aggravated circumstances. The Court made findings that despite all of the services completed by Mr. Thompson, he is not capable of raising any child, much less a child with special needs; that Mr. Thompson does not demonstrate emotional stability and cannot control his own behavior; that continuation of reunification services is not in the juvenile's best interest; that Mr. Thompson failed to show he benefitted from the services provided; and that offering training regarding Fetal Alcohol Spectrum Disorders (FASD)/Fetal Alcohol Syndrome (FAS) to Mr. Thompson is not appropriate because he has failed to benefit from more basic services.

The circuit court also found that it was in MC's best interest to terminate parental rights. Thompson now appeals.[1]

Termination-of-parental-rights cases are based upon de novo review. *E.g.*, *L.W. v. Ark. Dep't of Hum. Servs.*, 2011 Ark. App. 44, at 8, 380 S.W.3d 489, 494. Additionally, appellate courts will not reverse a termination order unless the findings were clearly erroneous, meaning "although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made." *Id.* at 9, 380 S.W.3d at 495. Further, appellate courts give due regard to the circuit court's ability to assess a witness's credibility. *Id.*, 380 S.W.3d at 494.

In order to terminate parental rights, a circuit court must find by clear and convincing evidence that at least one ground for termination existed and that termination is in the

---

[1]McAtee filed a consent to terminate her parental rights on January 19, 2022, so she is not a party to this appeal.

juvenile's best interest. *Id.* at 9–10, 380 S.W.3d at 494–95. "Clear and convincing evidence is that degree of proof that will produce in the fact finder a firm conviction as to the allegation sought to be established." *E.g.*, *Watkins v. Ark. Dep't of Hum. Servs.*, 2021 Ark. App. 55, at 4. In making a best-interest determination, the circuit court must consider the likelihood that the juvenile will be adopted and the potential harm that could be caused to the juvenile if returned to the parent. *E.g.*, *L.W.*, 2011 Ark. App. 44, at 11, 380 S.W.3d at 496. However, unlike termination grounds, potential harm and adoptability are only factors for the circuit court to consider, and each factor need not be established by clear and convincing evidence. *Id.*, 380 S.W.3d at 496. A no-reunification-services finding requires this same burden of proof as well as the same standard of review on appeal. *E.g.*, *McHenry v. Ark. Dep't of Hum. Servs.*, 2014 Ark. App. 443, at 9, 439 S.W.3d 724, 729.

On appeal, Thompson argues that because DHS failed to provide him with specialized services to properly parent MC given his FASD diagnosis, the circuit court erred in its finding that aggravated circumstances existed. We do not find merit in his argument.

Under the aggravated-circumstances ground, a circuit court may terminate parental rights or reunification services if there is little likelihood that further services will result in a successful reunification. *See* Ark. Code Ann. § 9-27-341(b)(3)(B)(ix)*(a)(A)–(B)(i)* (Supp. 2021); Ark. Code Ann. § 9-27-365(c)(2)(A)(v) (Repl. 2020). Here, DHS offered several services to Thompson, such as home visits, transportation, medical services, foster care, daycare, counseling, drug screens, a drug-and-alcohol assessment, anger-management classes, parenting classes, and inpatient and outpatient drug treatment. Despite these services, the

family therapist in this case, Freeze, testified that Thompson was not benefiting from family counseling because he was unable to regulate his emotions and got upset easily. Moreover, Freeze testified that Thompson had sadness, frustration, and anger issues and that she did not believe that he would be able to calmly discuss his issues and listen to MC. Furthermore, this was MC's third time in foster care, and multiple witnesses—including Freeze—testified that MC finally needed some stability.

This court has consistently held that proof of services is not an element of the aggravated-circumstances finding. *E.g.*, *Peterson v. Ark. Dep't of Hum. Servs.*, 2020 Ark. App. 75, at 12, 595 S.W.3d 38, 45. Here, the circuit court specifically found that FASD services would not be beneficial in Thompson's case because Thompson had not benefited from the basic case-plan services. Thompson is simply asking this court to reweigh the circuit court's consideration of evidence in this case, which is impermissible under our standard of review. *E.g.*, *Reyes-Ramos v. Ark. Dep't of Hum. Servs.*, 2019 Ark. App. 46, at 12, 571 S.W.3d 32, 39. Accordingly, we affirm the circuit court's aggravated-circumstances finding in both the termination order and the no-reunification-services order.

Thompson next argues that the circuit court erred in finding that termination of parental rights was in MC's best interest. The court may determine whether it is in a juvenile's best interest to terminate parental rights by considering the juvenile's adoptability and the potential harm caused by returning the juvenile to the parent. *E.g.*, *Kloss v. Ark. Dep't of Hum. Servs.*, 2019 Ark. App. 389, at 7, 585 S.W.3d 725, 729–30. Thompson fails to challenge the adoptability factor of the circuit court's best-interest finding; thus, we are not

required to address this factor. *See, e.g.*, *Easter v. Ark. Dep't of Hum. Servs.*, 2019 Ark. App. 441, at 8, 587 S.W.3d 64, 608.

Thompson does, however, challenge the potential-harm factor. To find potential harm, "the trial court is not required to find that actual harm would result or to affirmatively identify a potential harm." *E.g.*, *Kloss*, 2019 Ark. App. 389, at 7, 585 S.W.3d at 730. Potential harm must be viewed in a forward-looking manner and in broad terms, including the harm the child suffers from the lack of a stable, permanent home. *Collins v. Ark. Dep't of Hum. Servs.*, 2013 Ark. App. 90. Additionally, the same evidence that supports an aggravated-circumstances finding may also support a potential-harm finding. *Kloss*, 2019 Ark. App. 389, at 8, 585 S.W.3d at 730. Such is the case here.

Thompson's argument that the circuit court's potential-harm finding was clearly erroneous because he was not provided FASD services to reunify with MC is unpersuasive. We conclude that there was sufficient evidence to support a potential-harm finding based on the same evidence that supports the circuit court's aggravated-circumstances ground. In completing a de novo review of the record, the circuit court's finding that termination was in MC's best interest was not clearly erroneous, and we affirm.

Affirmed.

GLADWIN and MURPHY, JJ., agree.

*Dusti Standridge*, for appellant.

*Ellen K. Howard*, Ark. Dep't of Human Services, Office of Chief Counsel, for appellee.

*Dana McClain*, attorney ad litem for minor child.