KENNETH S. HIXSON, Judge
Appellant Alecia Harjo appeals from the termination of her parental rights to her son Z.H.1, age 8, and her daughter Z.H.2, age 6.[1] Because Z.H.1 and Z.H.2 are Indian children, the Indian Child Welfare Act (ICWA), 25 U.S.C. §§ 1901 et seq., applies to the case. On appeal, Alecia argues that the termination order should be reversed because the evidence was insufficient to establish statutory grounds for termination. We affirm.
We review termination-of-parental-rights cases de novo. Mitchell v. Ark. Dep't of Human Servs. , 2013 Ark. App. 715, 430 S.W.3d 851. At least one statutory ground must exist, in addition to a finding that it is in the children's best interest to terminate parental rights. Ark. Code Ann. § 9-27-341 (Supp. 2017); Kohlman v. Ark. Dep't of Human Servs. , 2018 Ark. App. 164, 544 S.W.3d 595. For termination proceedings subject to the ICWA, as in this case, the burden of proof is beyond a reasonable doubt. Ark. Code Ann. § 9-27-325(h)(3)(B)(2) (Supp. 2017). We will not reverse the trial court's ruling unless its findings are clearly erroneous. Sharks v. Ark. Dep't of Human Servs. , 2016 Ark. App. 435, 502 S.W.3d 569. A finding is clearly erroneous when, although there is evidence to support it, we are left with a definite and firm conviction that a mistake has been made. Id.
This case was initiated by appellee Arkansas Department of Human Services (DHS) when it filed a petition for emergency custody of the children in Washington County Circuit Court on May 2, 2016. An attached affidavit of a family-service worker stated that the children were removed from the parents' home in Washington County two days earlier pursuant to an emergency hold. The affidavit alleged that both parents, Alecia and Joshua, had been arrested, thereby leaving no caretaker for the children. Alecia was arrested for endangering the welfare of a minor and public intoxication. Joshua was arrested for endangering the welfare of a minor and domestic battery committed against Alecia. The affidavit further stated that there had been prior DHS involvement with the family for issues related to environmental neglect, educational neglect, and inadequate shelter.
On May 2, 2016, the Washington County Circuit Court entered an ex parte order for emergency custody of the children. A probable-cause order was entered on May 3, 2016.
The Washington County Circuit Court entered an adjudication order on June 22, *867 2016, finding the children to be dependent-neglected. The trial court placed custody of the children with their maternal grandfather, Max Trotter, who lives in Izard County. The trial court authorized Alecia to live in the home with Mr. Trotter and the children, but she was ordered not to be alone with the children. Alecia was ordered to cooperate with DHS, participate in counseling, submit to a drug-and-alcohol assessment and follow the recommendations, refrain from using illegal drugs or alcohol, submit to drug screens, and maintain stable housing and employment. The goal of the case was reunification. Because the juveniles were relocated to Izard County, an order was entered transferring the case to Izard County Circuit Court.
The Izard County Circuit Court conducted a review hearing on September 20, 2016, and the court subsequently entered a review order finding that the parents had complied with the case plan. On October 14, 2016, DHS filed in Izard County Circuit Court a motion for ex parte emergency custody of the children. Attached to the petition was an affidavit of a family-service worker stating:
There was an emergency and services could not be provided to prevent removal. FSW Hutchins received several phone calls from the grandfather, Max Trotter. Mr. Trotter stated that he can no longer take care of the children, due to the mother not being in compliance with the case and that she was using illegal substances. Mr. Trotter stated that he did not believe that the children would be safe in his home due to the children's father and his daughter's behaviors. Mr. Trotter stated that he did not want the children to be harmed and that his daughter was not doing what she needed to do. Mrs. Harjo contacted FSW Hutchins and was very erratic on the phone stating that her father was kicking her out of the home and she was going back to her husband in Northwest AR.
On October 24, 2016, the Izard County Circuit Court entered an order of emergency change of custody, placing the children in the custody of DHS. The children returned to Washington County, and an order was entered transferring the case back to Washington County Circuit Court.
On December 22, 2016, in Washington County Circuit Court, an agreed order was entered whereby the parties agreed to a trial home placement of the children with the parents. In that order, the parties agreed that Alecia and Joshua were in compliance with the case plan, that the parents' home was clean and appropriate, and that the parents had passed random drug screens. In addition, Alecia's criminal charges had been dismissed. Based on these circumstances, the parties agreed that a trial home placement was in the children's best interest.
The first of two permanency-planning hearings was held on April 13, 2017. In a permanency-planning order entered on April 13, 2017, the trial court found that the trial home placement was unsuccessful and that the children were removed from the trial home placement on February 5, 2017. The trial court further found that both parents had not complied with most of the case plan and had made minimal progress toward alleviating the causes of the children's removal from the home. With regard to Alecia, the trial court specifically found:
She has not maintained sobriety, has not maintained contact with DHS, has not passed all drug screens, and has not attended all visits offered to her. Mother has missed 9 out of 19 drug screens requested and failed 4 of the 10 she attended. Mother tested positive for methamphetamine as recently as March *868 20, 2017-and she did not contest the result.
The second permanency-planning hearing was held on June 21, 2017. In a permanency-planning order entered on June 23, 2017, the trial court found that Alecia had tested positive for methamphetamine, amphetamines, and THC on April 24, 2017, and again on June 15, 2017. The trial court also found that, despite three referrals, Alecia had not completed individual counseling. The goal of the case was changed to termination of parental rights and adoption.
On July 24, 2017, DHS filed a petition to terminate both parents' parental rights. The termination hearing was held on September 21, 2017.
On October 16, 2017, the trial court entered an order terminating the parental rights of both Alecia and Joshua. The trial court found by evidence beyond a reasonable doubt that termination of parental rights was in the children's best interest. In making its best-interest determination, the trial court specifically considered the likelihood that the children would be adopted, as well as the potential harm of returning them to the custody of their parents as required by Ark. Code Ann. § 9-27-341(b)(3)(A)(i) & (ii). With respect to both parents, the trial court found evidence beyond a reasonable doubt of the following three statutory grounds under subsection (b)(3)(B):
(i)(a) That a juvenile has been adjudicated by the court to be dependent-neglected and has continued to be out of the custody of the parent for twelve (12) months and, despite a meaningful effort by the department to rehabilitate the parent and correct the conditions that caused removal, those conditions have not been remedied by the parent.
....
(ii)(a) The juvenile has lived outside the home of the parent for a period of twelve (12) months, and the parent has willfully failed to provide significant material support in accordance with the parent's means or to maintain meaningful contact with the juvenile.
....
(vii)(a) That other factors or issues arose subsequent to the filing of the original petition for dependency-neglect that demonstrate that placement of the juvenile in the custody of the parent is contrary to the juvenile's health, safety, or welfare and that, despite the offer of appropriate family services, the parent has manifested the incapacity or indifference to remedy the subsequent issues or factors or rehabilitate the parent's circumstances that prevent the placement of the juvenile in the custody of the parent.
The trial court also found beyond a reasonable doubt, under the provisions of the ICWA, that DHS provided remedial services and rehabilitative programs designed to prevent the breakup of the Indian family but that those efforts proved unsuccessful. See 25 U.S.C. § 1912(d). Finally, the trial court found evidence beyond a reasonable doubt, including qualified expert testimony, that continued custody of the children by the parents would likely result in serious emotional or physical damage to the children, as also required by the ICWA. See 25 U.S.C. § 1912(f).[2]
Cortney Willis, the DHS caseworker assigned to this case, testified at the termination hearing. Ms. Willis testified that since being removed from the trial home placement in February 2017, the children have lived with their foster parents in an Indian tribal home. According to Ms. Willis, *869 the children are doing very well in foster care and are "absolutely adoptable." Ms. Willis indicated that Alecia visited the children only sporadically and that the visits caused the children to regress. Ms. Willis testified that on April 24, 2017, Alecia tested positive with "astronomical numbers" for methamphetamine, amphetamines, and THC. Alecia completed a residential substance-abuse treatment program between June 4 and August 3, 2017. However, according to Ms. Willis, Alecia continued to test positive after she had completed the program. Alecia tested positive for alcohol on August 15, 2017, and tested positive for methamphetamine on September 12, 2017. Alecia also evaded multiple drug screens after her release from drug treatment. Ms. Willis did not believe that Alecia had remedied the conditions that caused removal of the children. She further stated that due to Alecia's continued drug use, Alecia is incapable of caring for the children and keeping them safe. Ms. Willis also testified that Alecia was not in compliance with the case plan and had failed to maintain contact with DHS. Ms. Willis did not believe that the children would have a safe, stable, and permanent home if returned to Alecia's custody, and she recommended termination of parental rights.
Nicole Allison, a child-welfare specialist with the Cherokee Nation Indian Child Welfare Program, testified as an Indian-child-welfare expert. Ms. Allison testified that the children were placed in an ICWA-compliant foster home. After reviewing the files and court orders and listening to the testimony at the termination hearing, Ms. Allison believed that there was evidence beyond a reasonable doubt that continued custody by either parent would likely result in serious emotional or physical damage to the children. Ms. Willis also believed, after reviewing the services DHS offered and provided to the family, that active efforts were made by DHS to prevent the breakup of the Indian family.
The children's foster mother, identified as Hollie, testified that the children were doing very well in her home and were bonded to her and her husband. Hollie indicated that the children exhibited behavioral issues only after visits with their parents. Hollie testified that her home would be a potential adoptive placement for the children if parental rights were terminated.
Alecia testified that she is no longer in a relationship with Joshua and did not know where he lives. Alecia stated that she was staying with her mother until she could get an apartment. Alecia was employed by a temporary agency, but stated that she was working toward having her expired nursing license reinstated. Alecia acknowledged that she had missed some of the scheduled visits with her children. She also admitted to being a methamphetamine user, and stated that the children were removed from the trial home placement after both she and Joshua had tested positive for methamphetamine. However, she claimed that she had not used methamphetamine since completing the substance-abuse treatment program. Alecia stated that she did not have a good answer for why she waited 432 days into the case to go to rehabilitation. Alecia stated that, if the children could not be returned home and parental rights were terminated, she would like the children to be placed with Joshua's aunt so they could stay in the family.
In this appeal, Alecia argues that there was insufficient evidence to support any of the three statutory grounds found by the trial court under the Arkansas termination statute. Alecia contends that the failure-to-remedy ground was not proved because the sole cause of the children's *870 removal was her arrest that resulted in the children being left without a caregiver, and by the time of the termination hearing the charges against her had been dismissed. With respect to the lack-of-meaningful-contact-or-significant-support ground, the trial court specifically found only that Alecia had failed to maintain meaningful contact with the children; it made no finding that she had willfully failed to provide significant material support. Alecia argues that there was insufficient evidence to support this ground because, while she did miss some visits with the children, she attended numerous other visits and actually lived with the children when her father had custody and during the trial home placement. Finally, Alecia contends that there was insufficient evidence to support the subsequent-factors ground. Alecia asserts that she lives with her mother and there was no evidence that her mother's home is inappropriate. She further asserts that she has employment and is working toward reinstating her nursing license. Alecia also claims that DHS failed to offer appropriate family services as required by this ground because DHS did not offer drug treatment to address her drug issues until after the second permanency-planning hearing held in June 2017, which was just a few months before the termination hearing.
Only one ground is necessary to terminate parental rights. Wafford v. Ark. Dep't of Human Servs. , 2016 Ark. App. 299, 495 S.W.3d 96. We hold that the trial court did not clearly err in finding that DHS proved the subsequent-factors grounds under Ark. Code Ann. § 9-27-341(b)(3)(B)(vii)(a) , which provides that parental rights may be terminated when other factors arose subsequent to the filing of the original petition that demonstrate that placement of the juveniles in the custody of the parent is contrary to the juveniles health, safety, or welfare, and that despite the offer of appropriate family services, the parent has manifested the incapacity or indifference to remedy the subsequent factors or rehabilitate the parent's circumstances.
The record shows that during the course of this seventeen-month case, DHS provided Alecia extensive services including individual counseling, a drug-and-alcohol assessment, random drug screens, and residential drug treatment. The Indian-child-welfare expert testified that these services constituted active efforts by DHS to prevent the breakup of the Indian family. Despite these services, Alecia regressed. Alecia missed counseling sessions, missed visits with her children, and failed to maintain contact with DHS. Alecia also refused or failed to show up for numerous drug screens. When Alecia did submit to drug screens, many of them were positive. The record reflects that Alecia was positive for benzodiazepines on December 5 and 21, 2016; positive for methamphetamine on January 27, 2017 (when the children were in trial home placement with Alecia); positive for methamphetamine, amphetamines, and THC on March 20, 2017; positive for THC on April 21, 2017; positive for methamphetamine, amphetamines, and THC on April 24, 2017; positive for methamphetamine, amphetamines, and THC on April 28, 2017; positive for methamphetamine, amphetamines, and THC on June 15, 2017; positive for THC on June 23 and 30, 2017; positive for alcohol on August 15, 2017; and positive for methamphetamine on September 12, 2017.
Alecia's positive alcohol test on August 15, 2017, and positive methamphetamine test on September 12, 2017, came after she was released from residential-drug treatment in early August of 2017. In Alecia's brief, she contends that the September 12, 2017 test would have detected methamphetamine *871 ingested prior to her entering the treatment program, given the testimony that this was a hair-follicle test capable of detecting methamphetamine for about ninety days after use. However, even assuming that the September 12, 2017 test may have detected her methamphetamine use prior to the substance-abuse treatment, rather than after, there was further evidence that, after being released from treatment, Alecia failed to show up for five drug screens and refused another. On the only two screens Alecia submitted to after her release from drug treatment, she tested positive for alcohol and methamphetamine.
We have held that a parent's continued use of illegal drugs and failure to submit to drug screens is evidence of potential harm to the children. See Skaggs v. Ark. Dep't of Human Servs. , 2014 Ark. App. 229. In Allen v. Arkansas Department of Human Services. , 2011 Ark. App. 288, 384 S.W.3d 7, we held that a parent's continued use of illegal drugs shows an indifference to remedying the problems plaguing the family. Moreover, failure to follow the case plan, participate in counseling, and submit to random drug screens shows indifference or an inability to comply. Allen, supra. Based on the record before us, we conclude that the trial court's decision to terminate Alecia's parental rights based on the subsequent-factors ground was not clearly erroneous.
Affirmed.
Whiteaker and Murphy, JJ., agree.

The children's father, Joshua Harjo, also had his parental rights terminated. However, Joshua was not present at the termination hearing and did not appeal the termination decision. As such, he is not a party to this appeal.

On appeal, Alecia does not challenge these findings under the ICWA.