Cite as 2019 Ark. App. 389

# ARKANSAS COURT OF APPEALS

DIVISION II

**No.** CV-18-709

| | |
|---|---|
| CLINT KLOSS | **Opinion Delivered:** September 18, 2019 |
| APPELLANT | |
| | APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT, EIGHTH DIVISION |
| V. | [NO. 60JV-17-620] |
| ARKANSAS DEPARTMENT OF HUMAN SERVICES AND MINOR CHILDREN | |
| APPELLEES | HONORABLE WILEY A. BRANTON, JR., JUDGE |
| | AFFIRMED; MOTION TO WITHDRAW GRANTED |

## PHILLIP T. WHITEAKER, Judge

Clint Kloss appeals a Pulaski County Circuit Court order terminating his parental rights to his daughters, K.K.1 and K.K.2.[1] Pursuant to *Linker-Flores v. Arkansas Department of Human Services*, 359 Ark. 131, 194 S.W.3d 739 (2004), and Arkansas Supreme Court Rule 6-9(i) (2018), Kloss's counsel has filed a no-merit brief asserting that there are no issues of arguable merit to support an appeal and an accompanying motion to be relieved as counsel. Counsel's brief contains an abstract and addendum of the proceedings below and states that the only rulings adverse to Kloss were the termination decision and the denial of his request for additional time to achieve reunification. Counsel asserts that there was sufficient

---

[1]This is the second time this case has been before us. The first time we ordered rebriefing due to counsel's failure to adequately address all adverse rulings. *Kloss v. Ark. Dep't of Human Servs.*, 2019 Ark. App. 121. Counsel has resubmitted the appeal, again seeking to withdraw as counsel on the basis that the appeal has no merit.

evidence to support the termination and that the trial court's denial of additional time did not constitute reversible error. After carefully reviewing the record and the no-merit brief, we conclude that counsel's brief adequately addresses all the adverse rulings and correctly posits that there are no issues of arguable merit on which to base an appeal.

As required by Rule 6-9(i)(3), the clerk of our court sent copies of the brief and the motion to withdraw to Kloss informing him of his right to file pro se points for reversal; he has done so. We have reviewed his claims and hold that they were not raised below; are not preserved for appeal; or present no meritorious basis for reversal. Therefore, we affirm.

We provide the following summary of facts and procedural history of the case. Sherrie Sinkey and Clint Kloss are the unmarried, biological parents of K.K.1 and K.K.2. Sinkey and Kloss were living together with the children in May 2017, when the Pulaski County Sheriff's office executed a search warrant on their home. During the execution of the warrant, the officers found illegal controlled substances,[2] drug paraphernalia, and stolen property. As a result, Kloss and Sinkey were arrested on two counts of endangering the welfare of a minor, maintaining a drug premises (enhanced), possession of paraphernalia, possession of a Schedule II substance, and felony theft by receiving. Following his arrest, Kloss overdosed in the back of the police vehicle and had to be rushed to the emergency room. The Arkansas Department of Human Services (DHS) responded to take a seventy-two-hour hold on the children. DHS found the home infested with roaches, and the children were dirty and covered in bug bites.

---

[2]Officers found marijuana, hydrocodone, and methamphetamine within reach of four-year-old K.K.1 and two-year-old K.K.2.

In July 2017, the circuit court adjudicated the children dependent-neglected as a result of parental unfitness, living in a drug premises, being the subject of a drug raid, exposure to toxic illegal drugs, and environmental neglect. The court also found, by clear and convincing evidence, that both Sinkey and Kloss had subjected the children to aggravated circumstances based on extreme and multiple risks of harm.[3] Despite its finding of aggravated circumstances, the court declined to fast track the case.

Subsequent to the adjudication, DHS provided services to Kloss, and the court monitored the services through appropriate review hearings. Eventually, Kloss was adjudicated the father and obtained status as a parent at the permanency-planning hearing on March 27, 2018.

In May 2018, DHS filed a petition to terminate the parental rights of both Sinkey and Kloss. As to Kloss, DHS alleged three grounds for termination: (1) failure to remedy as a noncustodial parent, Ark. Code Ann. § 9-27-341(b)(3)(B)(i)*(b)*; (2) other factors or issues arising subsequent to adjudication, Ark. Code Ann. § 9-27-341(b)(3)(B)(vii)*(a)*; and (3) aggravated circumstances, Ark. Code Ann. § 9-27-341(b)(3)(B)(ix)*(a)(3)(B)(i)*. The court held a hearing on the petition, and ultimately the trial court terminated Kloss's parental rights based on all three grounds alleged in the petition. The court then found that

---

[3]As noted in our previous opinion, by definition, a finding of aggravated circumstances applies only to a parent. At the time of the adjudication hearing, Kloss had not yet been declared the father of the children; therefore, he had attained the status of only a putative father. Thus, he was not a "parent" subject to the aggravated-circumstances finding at the adjudication.

3

termination was in the best interest of the children, considering potential harm and adoptability. Kloss appeals the termination decision.

Pursuant to Arkansas Code Annotated section 9-27-341(b)(3), an order forever terminating parental rights shall be based on a finding by clear and convincing evidence that (1) there are one or more statutory grounds and (2) it is in the best interest of the juvenile, including consideration of the likelihood that the juvenile will be adopted and the potential harm to the health and safety of the child if returned to the custody of the parent. We review termination-of-parental-rights orders de novo but will not reverse the trial court's findings of fact unless they are clearly erroneous. *Harjo v. Ark. Dep't of Human Servs.*, 2018 Ark. App. 268, 548 S.W.3d 865. A finding is clearly erroneous when, although there is evidence to support it, the appellate court is left on the entire evidence with the firm conviction that a mistake has been committed. *Id.* We must defer to the superior position of the circuit court to weigh the credibility of the witnesses. *Ewasiuk v. Ark. Dep't of Human Servs.*, 2018 Ark. App. 59, 540 S.W.3d 318. On appellate review, this court gives a high degree of deference to the trial court, which is in a far superior position to observe the parties before it. *Id.* Termination of parental rights is an extreme remedy and in derogation of the natural rights of parents, but parental rights will not be enforced to the detriment or destruction of the health and well-being of the child. *Id.*

Counsel states in her no-merit brief that any argument challenging the statutory grounds for termination would be wholly frivolous. Regarding the statutory grounds supporting termination, counsel argues that there was sufficient evidence to support the trial court's finding of aggravated circumstances. DHS pled, and the trial court found, that Kloss

4

had subjected his children to aggravated circumstances, meaning there is little likelihood that services to Kloss will result in successful reunification. Ark. Code Ann. § 9-27-341(b)(3)(B)(ix)*(a)(3)(B)*.[4] Counsel correctly asserts that Kloss was determined to be the father of K.K.1 and K.K.2 at the permanency-planning hearing; thus, he falls within the class of persons to whom this statutory ground applies. Counsel further argues that the evidence reflects that there is little likelihood that services would result in a successful reunification. Counsel is correct in this regard as well.

We agree that there was little likelihood of successful reunification and that there was sufficient evidence to support the trial court's finding of aggravated circumstances. Kloss has a persistent and unresolved addiction to drugs. Kloss admitted in his own testimony that he has a drug problem and admitted that his drug of choice is methamphetamine. While he denied having a problem with either cocaine or opiates, he admitted testing positive in a hair-follicle test to multiple drugs and admitted that he had overdosed on fentanyl. In response to Kloss's addiction, DHS provided rehabilitation services, including drug screens and a drug assessment. On the drug screens, Kloss tested positive for amphetamines, methamphetamine, opiates (hydrocodone and oxycodone), cocaine, benzos, and BUP, which is a narcotic. He did complete his drug assessment but did not complete the

---

[4]In the first appeal, counsel relied on the fact that aggravated circumstances had been found at adjudication. We advised counsel that the trial court had not relied on that particular definition of aggravated circumstances when ordering termination and that Kloss had not been deemed a "parent" at the time of the adjudication even if that subsection were to be applied. Counsel, on rebrief, has now argued the correct ground and has explained that Kloss was found to be a "parent" at the permanency-planning hearing and thus falls within the category of persons to whom this statutory ground applies.

recommended drug counseling. James Zachary Green, a substance-abuse counselor, testified that it had been recommended that Kloss attend nine individual sessions and eighteen group sessions over a nine-week period. Kloss did not attend any of the individual sessions and attended only eight group sessions. While Kloss testified that he believes the drug classes have been helpful, he admitted that he does not have a sponsor, could not recite what "step" of "12 step" recovery he was practicing, and continues his relationship with Sinkey, who admittedly could not maintain her own sobriety. [5]

In addition, DHS offered Kloss parenting classes and a psychological evaluation, both of which he completed. He was then referred for individual counseling. Lynn Hemphill, a clinical social worker, testified that Kloss was one of his clients and that he was scheduled for weekly individual therapy sessions to deal with generalized anxiety and situational depression. After the initial meeting, Hemphill considered referring him to a psychiatrist for a medication-management assessment to resolve some of Kloss's issues. In all, Hemphill saw Kloss on only one other occasion,[6] and Kloss never saw a psychiatrist.

In completing a de novo review of the record, we hold that the trial court's determination that there was little likelihood of successful reunification was not clear error. *See Ladd v. Ark. Dep't of Human Servs.*, 2017 Ark. App. 419, 526 S.W.3d 883 (mother failed to remedy drug issues despite services directed at her addiction); *Schaffer v. Ark. Dep't of Human Servs.*, 2016 Ark. App. 208, 489 S.W.3d 182 (father continued to test positive for

---

[5]Ms. Sinkey's parental rights were also terminated after the hearing. She did not appeal the termination decision and is not a part of this appeal.

[6]Admittedly, Kloss did not attend some sessions due to administrative error on the part of Hemphill's office, but he also did not attend other sessions of his own accord.

drugs and failed to demonstrate his ability to be a safe and stable parent). Because only one ground of section 9-27-341(b)(3)(B) need be proved to support termination, there can be no meritorious argument for challenging the statutory-grounds findings of the court. *Sims v. Ark. Dep't of Human Servs.*, 2015 Ark. App. 137, at 7.

As for the best-interest finding, counsel argues that there was sufficient evidence to support the court's finding that termination was in the best interest of the children. In determining the best interest of the juvenile, a trial court must take into consideration (1) the likelihood that the juvenile will be adopted if the termination petition is granted and (2) the potential harm, specifically addressing the effect on the health and safety of the child, caused by returning the child to the custody of the parent. *Myers v. Ark. Dep't of Human Servs.*, 2011 Ark. 182, 380 S.W.3d 906. In considering potential harm caused by returning the child to the parent, the trial court is not required to find that actual harm would result or affirmatively identify a potential harm. *Welch v. Ark. Dep't of Human Servs.*, 2010 Ark. App. 798, 378 S.W.3d 290.

Here, Danyetta Pride, the adoption specialist, testified that it was highly likely that the children would be adopted because there were 435 families available to adopt children with their attributes. Our appellate courts have repeatedly held that the testimony of an adoption specialist is sufficient to support a trial court's adoptability findings. *Whitaker v. Ark. Dep't of Human Servs.*, 2018 Ark. App. 61, at 15, 540 S.W.3d 719, 728. Accordingly, Pride's testimony was sufficient to support the trial court's adoptability finding in this case.

As to potential harm, we conclude that the same evidence that supports the aggravated-circumstances ground of little likelihood of successful reunification is sufficient

7

to support the trial court's potential-harm finding. Kloss's own testimony supports that he was not in a position to parent the children at the time of termination. He had been employed for approximately only two weeks, had drug charges still pending from the incident leading to the removal of the children, was currently in drug court on previous charges, and acknowledged that if he is found guilty of his current charges, the State intended to file a petition to revoke. Additionally, the court heard evidence that Kloss had failed to maintain stable housing or employment, was driving without a license, and was at risk of having his parole revoked due to his actions. Potential harm must be viewed in a forward-looking manner and in broad terms, including the harm the child suffers from the lack of a stable, permanent home. *Collins v. Ark. Dep't of Human Servs.*, 2013 Ark. App. 90. In completing a de novo review of the record, the court's finding that termination was in the best interest of the children was not clear error.

Other than the termination decision, there was only one other potentially adverse ruling—Kloss's request for more time for reunification. However, a child's need for permanency and stability may override a parent's request for more time to improve the parent's circumstances. *Rylie v. Ark. Dep't of Human Servs.*, 2018 Ark. App. 366, at 7, 554 S.W.3d 275, 278. Here, the children had been out of the home and in DHS custody for over a year; yet Kloss had done practically nothing until the last minute to achieve reunification. He did not obtain employment or housing until just before the termination hearing. Despite his admission of a drug problem, he did not attend all his counseling sessions or even have a sponsor at the time of termination. In fact, he failed two separate drug tests. Kloss had ample time to prove he could parent the children during the pendency of the

proceedings—he did not do so. The children's need for permanency outweighs his request for additional time.

We note that Kloss filed pro se points for reversal. He argues that (1) he did not receive a lawyer until late in the case, (2) he was denied more time, and (3) he was not offered drug-rehabilitation services until later in the case because of the delay in proving paternity. He also erroneously states that he passed every drug test they gave him; there was evidence at the hearing that he failed two separate drug tests. Only his request for more time was raised at the trial court level, and as noted above, it has no merit. As for the other two complaints, they are not preserved because they are being argued for the first time on appeal. Even in termination cases, we will not address arguments raised for the first time on appeal. *Williams v. Ark. Dep't of Human Servs.*, 2019 Ark. App. 280, at 7, 577 S.W.3d 402, 407.

Affirmed; motion to withdraw granted.

ABRAMSON and GLADWIN, JJ., agree.

*Leah Lanford*, Arkansas Public Defender Commission, for appellant.

One brief only.