Cite as 2024 Ark. App. 306

# ARKANSAS COURT OF APPEALS

DIVISION IV
No. CV-23-726

|  |  |
|---|---|
| SHELLEY DRUMMOND AND JAMES PETTIGREW | Opinion Delivered May 8, 2024 |
| APPELLANTS | APPEAL FROM THE SEBASTIAN COUNTY CIRCUIT COURT, FORT SMITH DISTRICT [NO. 66FJV-22-119] |
| V. | |
| ARKANSAS DEPARTMENT OF HUMAN SERVICES AND MINOR CHILDREN | HONORABLE LEIGH ZUERKER, JUDGE |
| APPELLEES | AFFIRMED; MOTIONS TO WITHDRAW GRANTED |

## MIKE MURPHY, Judge

Counsel for Shelley Drummond and counsel for James Pettigrew bring this no-merit appeal from the Sebastian County Circuit Court's order terminating their parental rights to their minor children, MC1 (DOB 04/22/11), MC2 (DOB 11/19/12), MC3 (DOB 04/21/14), MC4 (DOB 08/19/18), and MC5 (DOB 3-22-22). Following the dictates of Arkansas Supreme Court and Court of Appeals Rule 6-9(j) (2022) and *Linker-Flores v. Arkansas Department of Human Services*, 359 Ark. 131, 194 S.W.3d 739 (2004), Drummond's and Pettigrew's attorneys have each filed a motion to be relieved as counsel and a no-merit brief asserting that there are no issues of arguable merit to support an appeal. The clerk of this court sent copies of the briefs and the motions to withdraw to Drummond and Pettigrew, informing them of their right to file pro se points for reversal pursuant to Rule 6-

9(j)(3), and neither has done so. Having reviewed the briefs and the record, we agree that an appeal would be wholly without merit. Therefore, we affirm the order terminating Drummond's and Pettigrew's parental rights and grant their counsel's motions to withdraw from representation.

On March 18, 2022, the Arkansas Department of Human Services ("DHS") filed a petition for ex parte emergency custody and dependency-neglect after placing a hold on MC1, MC2, MC3, and MC4. In an affidavit attached to the emergency petition, a family service worker ("FSW") averred that DHS had been present at a Family in Need of Services ("FINS") hearing on March 16, 2022, and had placed a hold that same day after the court ordered the children be removed from the custody of their parents and placed into DHS's custody. A week prior at a FINS hearing, Drummond tested positive for methamphetamine, ecstasy, and THC, and she was again positive for methamphetamine and THC at the hearing on March 16. Pettigrew refused a drug test. An ex parte order placing the children in DHS's legal custody was also filed on March 18.

The probable-cause hearing was held on March 22, and the children continued in DHS's custody and an adjudication hearing was set. The same day as the probable-cause hearing, Drummond gave birth to MC5, and because her older siblings had been removed, DHS exercised a seventy-two-hour hold on MC5 on March 28. A petition for ex parte emergency custody and dependency-neglect was filed on March 31, and an ex parte order placing MC5 in DHS's legal custody was entered the same day. Drummond was present for

the probable-cause hearing as to MC5 held on April 7, 2022. MC5 remained in the custody of DHS and an adjudication hearing was set.[1]

The adjudication hearings in both cases were held on May 12, 2022. The findings were identical in both orders. The court found the children to be dependent-neglected on the basis of a stipulation to parental unfitness due to the parents' substance abuse. The court ordered that the children remain in the custody of DHS and the goal of both cases was set as reunification. Visitation would be supervised by DHS for four hours weekly. The parents were ordered to participate in the case plan; obtain and maintain stable housing, employment, income, and transportation; complete parenting classes; submit to a drug-and-alcohol assessment and follow any recommendations; participate in counseling; submit to random drug screens; and keep DHS informed of any significant life events.

At the first review hearing on September 15, the court withheld a finding of reasonable efforts because "the Department ha[d] failed the family in regard to visitation by missing visits over approximately the last four (4) months." The court gave DHS an "opportunity to remedy this situation" if it presented proof within ninety days that it was complying with the court-ordered visitation. A staffing to address the issue of "making up" the missed visitation was to be held within thirty days.

At the staffing and second review hearing, the court found that DHS had made reasonable efforts due to evidence presented that DHS was arranging weekly in-person

---

[1]The cases were eventually consolidated.

visitation in addition to virtual visitation two times a week to make up for the previously missed visits. Neither parent was present at the second review hearing, the children continued in the custody of DHS, and the goal remained reunification.

The parents were not present at the permanency-planning hearing held on March 9, 2023. The children remained in the custody of DHS, and the goal of the case was changed to adoption. The court found that neither Drummond nor Pettigrew had substantially complied with the case plan and court orders—they had remained "unstable, noncompliant and not diligently worked toward reunification." DHS filed a termination-of-parental-rights petition on April 11 pleading the following grounds: twelve months, failure to remedy; twelve months, failure to provide significant material support or maintain meaningful contact; subsequent factors; and aggravated circumstances—specifically, little likelihood that services would result in reunification.

The termination hearing was held on June 22, 2023. FSW Ashley Avery testified first about her attendance at the FINS hearing. She testified the FINS case was instigated because there were issues with the children not attending school, inadequate supervision, and the parents' use of illegal substances.

Elizabeth Ryan, the caseworker since September 2022, provided the following testimony. Upon being assigned the case, Ryan verified that referrals for the services for the parents had been made, and she made sure those referrals were up to date. At the time of the termination hearing, the parents were homeless, had no transportation, and were unemployed. They occasionally brought food and gifts for the children. Neither parent had

4

completed parenting classes, and they never completed the drug-and-alcohol assessment. Ryan testified that Drummond left drug treatment after six days and left MC5 at the facility without letting DHS know. Ryan explained there were a limited number of drug screens because the parents did not have a stable residence, so it was hard to drop in for a random drug screen. Until the last few months, the parents continued to use illegal drugs.

Ryan testified to the difficulty of maintaining contact with the parents. Ryan communicated reminders by email and text messages about services that needed to be completed and appointments that needed to be met but would typically get no response from the parents. Ryan also sent emails to Drummond containing the link for the Zoom visitation with the children, and those links were used by the parents. Ryan met with the parents at the McDonald's in Greenwood on February 13 or 14, 2022, to go over the case plan and discuss what was not completed and the things that needed to be completed as soon as possible. She testified that at that time, the parents were living with Drummond's mom in her one-bedroom apartment.

In terms of housing, transportation, and employment, Ryan referred the parents to 100 Families but did not take any further action concerning those issues. Ryan testified that 100 Families is a community-led organization that has resources to "connect families to obtaining housing transportation or setting them up with some sort of job or temp employing agency." She explained that it was typical for her to refer clients to the organization.

Ryan testified that the children are healthy and adoptable and that termination is in their best interest because very little of the case plan had been completed. Ryan explained that the parts of the case plan the parents have completed are not things that would show they are prepared and ready for the five children to return to their custody.

Drummond testified next. She acknowledged that there had been a prior protective-services case after she tested positive for amphetamine and methamphetamine at the time of MC4's birth in 2018. Drummond testified that other than the one positive drug screen, she had been clean the entirety of the case. She was currently homeless, was not employed, and did not have stable transportation. Drummond admitted that she had not completed all the services set out in the case plan because she did not have a working vehicle. While initially stating that DHS failed to provide transportation, Drummond did testify that, in fact, DHS offered transportation.

When asked about the emails from Ryan, Drummond testified that she had not given the caseworker an update because there was not one to give. While her email had not changed, she could not confirm that she had received all the emails sent by Ryan because she did not always have access to her email.

Pettigrew testified that he and Drummond had lived together since before the case had opened; and since being evicted after the children had been taken into foster care, they had lived in their truck, in hotels, or with friends. Pettigrew was last employed in December 2022. He admitted that he used methamphetamine a week prior. He testified that he refused

the drug screens because they were against his spiritual beliefs. Pettigrew acknowledged that he had not fully complied with the case plan or orders of the court.

At the end of the hearing, the court ruled that it was granting DHS's petition. An order reflecting the ruling was entered on August 8, 2023, and the order set forth the court's findings to support the following grounds for both parents: failure to remedy, subsequent factors, and aggravated circumstances. Drummond and Pettigrew have filed timely notices of appeal, and their attorneys have now filed separate no-merit briefs and motions to be relieved as counsel.

The first adverse ruling discussed by each parent's counsel was the circuit court's termination decision. This court reviews termination-of-parental-rights cases de novo. *Lloyd v. Ark. Dep't of Hum. Servs.*, 2022 Ark. App. 461, at 7, 655 S.W.3d 534, 540. Termination requires a finding of at least one statutory ground and a finding that termination is in the child's best interest. *Id.* Arkansas Code Annotated section 9-27-341(b)(3) (Supp. 2023) requires a circuit court's order terminating parental rights to be based on clear and convincing evidence. *Lloyd*, 2022 Ark. App. 461, at 8, 655 S.W.3d at 540. Clear and convincing evidence is that degree of proof that will produce in the fact-finder a firm conviction as to the allegation sought to be established. *Barnett v. Ark. Dep't of Hum. Servs.*, 2023 Ark. App. 481. When the burden of proving a disputed fact is by clear and convincing evidence, the question that must be answered on appeal is whether the circuit court's finding was clearly erroneous. *Id.* A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm

conviction that a mistake has been made. *Id.* This court gives a high level of deference to the circuit court because it is in a far superior position to observe the parties before it and to judge the credibility of the witnesses and the weight of the evidence. *Id.*

A court of competent jurisdiction may terminate parental rights when the parent is found to have subjected any juvenile to aggravated circumstances. Ark. Code Ann. § 9-27 341(b)(3)(B)(ix)*(a)(3)(A)*. As applied in this case, aggravated circumstances means that "a determination has been or is made by a judge that there is little likelihood that services to the family will result in successful reunification." Ark. Code Ann. § 9-27-341(b)(3)(B)(ix) *(a)(3)(B)(i)*. To prevail on this ground, DHS was required to demonstrate that if appropriate reunification services were provided, there is little likelihood that reunification could be achieved. *McCullar v. Ark. Dep't of Hum. Servs.*, 2024 Ark. App. 15, at 7, 683 S.W.3d 202, 208. A parent can create this type of aggravated circumstance by not following through with offers of assistance, by not completing basic goals of the case plan, and when there is a lack of significant progress on the parent's part. *Id.*

Here, the circuit court heard clear and convincing evidence in support of the aggravated-circumstances ground. Drummond and Pettigrew failed to comply with the case plan or show any progress toward reunification. Among other requirements, the parents had been ordered to obtain and maintain stable housing, employment, income, and transportation. Yet, at the time of the termination hearing, they were homeless and had no transportation, income, or employment. Additionally, Drummond and Pettigrew were ordered to submit to a drug-and-alcohol assessment and follow any recommendations and

submit to random drug screens. Both Drummond and Pettigrew failed to comply despite multiple referrals. Pettigrew, admittedly, had used methamphetamine as recently as a week prior to the termination hearing. In fact, they were both in a worse position than when the case was opened. There was no clear idea if or when the parents would achieve stability because the case never progressed to the point where unsupervised visits—let alone a trial home placement—could occur.

In both no-merit briefs, the attorneys correctly note that there are no meritorious grounds for appeal. Despite multiple referrals and the caseworker repeatedly reminding the parents of the various services that were available to them, Drummond and Pettigrew still failed to comply and demonstrate they could provide a suitable, safe environment for the children. This is similar to other situations in which we have consistently affirmed a finding of aggravated circumstances. *See, e.g.*, *Cullum v. Ark. Dep't of Hum. Servs.*, 2022 Ark. App. 34 (father received various services but continued to test positive for drugs, suffer from housing instability, and have anger-management issues); *Kloss v. Ark. Dep't of Hum. Servs.*, 2019 Ark. App. 389, 585 S.W.3d 725 (despite services, father continued to test positive for drugs and failed to take advantage of therapy and counseling). Accordingly, we agree with both appellate counsel that the circuit court's findings are supported by the testimony and evidence presented at the termination hearing and are sufficient to support an aggravated-circumstances finding. Because only one ground found in section 9-27-341(b)(3)(B) need be proved to support termination, there can be no meritorious argument for challenging the statutory-grounds findings of the court. *Kloss*, *supra*.

As for the best-interest finding, counsel for both Drummond and Pettigrew argue that there was sufficient evidence to support the court's finding that termination was in the best interest of the children. When making the best-interest finding, a circuit court must consider (1) the likelihood that the child will be adopted if the termination petition is granted; and (2) the potential harm, specifically addressing the effect on the health and safety of the child, caused by returning the child to the custody of the parent. *Migues v. Ark. Dep't of Hum. Servs.*, 2019 Ark. App. 439, at 10, 586 S.W.3d 221, 227–28.

Here, the caseworker testified that all the children are adoptable and that there were no barriers to adoption for any of the children, which supports the circuit court's adoptability finding. *Cole v. Ark. Dep't of Hum. Servs.*, 2018 Ark. App. 121, at 6–7, 543 S.W.3d 540, 544.

As to potential harm, the circuit court is not required to find that actual harm would result or to affirmatively identify a potential harm. *Ross v. Ark. Dep't of Hum. Servs.*, 2017 Ark. App. 503, 529 S.W.3d 692. Potential harm must be viewed in broad terms, and "potential" necessarily means that the court is required to look to future possibilities. *Id.* We have held that continued drug use and instability demonstrate potential harm sufficient to support a best-interest finding in a termination-of-parental-rights case.

The circuit court was presented with sufficient evidence of potential harm, and the same facts that support the aggravated-circumstances finding support the court's potential-harm finding. In both no-merit briefs, counsel assert that the circuit court's finding that the children would be at risk of potential harm if returned to Drummond or Pettigrew was not

erroneous. We agree with their assessment and conclude that the evidence was sufficient to support the circuit court's best-interest analysis.

Counsel has complied with the dictates of *Linker-Flores* and the rules of this court, and we conclude that an appeal would be wholly frivolous in this case. Accordingly, we affirm the order and grant counsel's motions to withdraw.

Affirmed; motions to withdraw granted.

ABRAMSON and THYER, JJ., agree.

*Jennifer Oyler Olson*, Arkansas Commission for Parent Counsel, for separate appellant Shelley Drummond.

*James & Streit*, by: *Jonathan R. Streit*, for separate appellant James Pettigrew.

No brief filed by appellees.