Cite as 2024 Ark. App. 395

# ARKANSAS COURT OF APPEALS

DIVISION III
No. CV-24-91

| | |
|---|---|
| JOHN BRASWELL<br><br>APPELLANT | Opinion Delivered June 5, 2024 |
| V. | APPEAL FROM THE LITTLE RIVER COUNTY CIRCUIT COURT<br>[NO. 41JV-21-73] |
| ARKANSAS DEPARTMENT OF HUMAN SERVICES AND MINOR CHILDREN<br><br>APPELLEES | HONORABLE BRYAN CHESSHIR, JUDGE |
| | AFFIRMED; MOTION TO WITHDRAW GRANTED |

**MIKE MURPHY, Judge**

Counsel for John Braswell brings this no-merit appeal from the Little River County Circuit Court's order terminating his parental rights to his minor children, MC1 (DOB 07/18/09), MC2 (DOB 08/08/17), and MC3 (DOB 07/10/18). Following the dictates of Arkansas Supreme Court and Court of Appeals Rule 6-9(j) (2022) and *Linker-Flores v. Arkansas Department of Human Services*, 359 Ark. 131, 194 S.W.3d 739 (2004), Braswell's attorney has filed a motion to be relieved as counsel and a no-merit brief asserting that there are no issues of arguable merit to support an appeal. The clerk of this court sent a copy of the brief and the motion to withdraw to Braswell, informing him of his right to file pro se points for reversal pursuant to Rule 6-9(j)(3), and he has not done so. Having reviewed the brief and the record, we agree that an appeal would be wholly without merit. Therefore, we

affirm the order terminating Braswell's parental rights and grant counsel's motion to withdraw from representation.

On November 29, 2021, the Arkansas Department of Human Services ("DHS") filed a petition for ex parte emergency custody and dependency-neglect after it had exercised a hold on MC1, MC2, and MC3. In an affidavit attached to the emergency petition, a family service worker ("FSW") averred that DHS became involved with the family after the children's mother, Amber O'Neal, was found in contempt of court at a family in need of services ("FINS") hearing on November 16, 2021. The FINS petition alleged that MC1 was in need of services due to her lack of school attendance. At the hearing, O'Neal was visibly under the influence, and the court ordered a drug screen. The screen was negative because she had submitted fake urine; however, she later admitted she had used illegal substances. Braswell informed the court that he shared joint custody of the children, but he was unable to care for them at that time due to a house fire four days before the hearing. A hold was exercised that day due to concerns regarding educational neglect, environmental neglect, and parental unfitness. An ex parte order placing the children in DHS's legal custody was also filed on November 29.[1]

At the probable-cause hearing, the children continued in DHS's custody, and an adjudication hearing was set. An adjudication hearing concerning Braswell was held on April 1, 2022. At the hearing, Braswell was found to be the children's parent because he was

---

[1]The court also terminated the rights of O'Neil, but she did not appeal the termination decision. This appeal only concerns Braswell.

married to O'Neil when each child was born. The court found the children dependent-neglected on the basis of neglect and parental unfitness due to the allegations in the affidavit being true and correct. The court ordered the children to remain in the custody of DHS, and the goal of the case was set as reunification. Visitation was unsupervised, and DHS had the discretion to begin a trial home placement once parenting classes were completed.

The first review hearing was held on July 15, 2022. The children remained in the custody of DHS, and a trial home visit was authorized. Both parents were in compliance with the case plan and court orders, and the goal remained reunification with a concurrent goal of relative placement. The first permanency-planning hearing was held on October 7. The children remained in the custody of DHS and continued in the trial home placement with their parents. The goal of the case remained reunification. Both parents were in compliance and were ordered to participate in both individual counseling and family counseling with MC1. If any of the children missed three or more days of school before the Christmas break, they would be removed from the parents' home.

The second review hearing was held on February 10, 2023. The children remained in the custody of DHS, and the goal remained reunification with a concurrent goal of relative placement. The trial home placement was ordered to cease "immediately" because MC1 had missed a substantial number of school days, and there were at least three times that the parents had failed to pick up MC2 and MC3 from daycare. The parents were found to be noncompliant with the case plan and court orders, and visitation with Braswell was to be supervised by DHS.

The second permanency-planning hearing was held on August 18. The children remained in the custody of DHS, and the goal of the case changed to adoption. The parents were noncompliant: they had been evicted from their housing, had substance-abuse issues, had failed to follow through with counseling, and had been arrested three times since the last hearing. The same day the second permanency-planning hearing was held, DHS filed a termination-of-parental-rights petition. The following grounds were pled: twelve months, failure to remedy by the custodial parent; twelve months, failure to remedy by the noncustodial parent; twelve months, failure to provide significant material support or maintain meaningful contact; subsequent factors; and aggravated circumstances—specifically, little likelihood that services will result in reunification.

The termination hearing was held on October 6. The first witness was Camille Stanley, the county supervisor who had been the primary caseworker on the case since it opened, and she testified to the following. Other than the trial home placement, which lasted six months, the children had remained out of the home since November 2021. At the beginning of the case, both parents were compliant and participated in services. The situation began to deteriorate after the trial home placement had begun. Out of the twelve staffings, the parents participated in only five. Stanley testified that she had numerous conversations with the parents about what was needed to retain the children in their home, but she did not see a sustained change in their behavior.

Braswell was incarcerated at one point during the case, and Stanley stated that during that time, he did not visit with the children. While he was on time for some of the visits,

during the last two months, he missed one visit, was an hour and a half late for one visit, and was forty-five minutes late for another. Braswell did notify DHS if he was running late, but the caseworker never knew how late he would be. DHS offered Braswell transportation to the visits. Stanley testified that Braswell completed parenting classes and his psychological evaluation. He completed the intake for individual counseling but stopped attending after two sessions. Since the case opened, DHS had offered him assistance with housing, transportation, and daycare. After Braswell's arrest, Braswell and O'Neil were no longer eligible for their housing and had to move. Braswell did not require employment assistance because he received Social Security income.

Stanley testified that there were no factors that would interfere with adoption and that eleven families had been identified that were willing to adopt a sibling group with the children's characteristics. MC1 was in one foster home while MC2 and MC3 were in another. The homes were within five minutes of each other, and the siblings visited frequently. At the beginning of the case, DHS had considered one of the grandfathers for placement, but he was deemed inappropriate since he contributed to the truancy issues concerning MC1. Braswell had given DHS the name and email address for his brother as another placement option, but the brother had not replied when DHS reached out to him.

Stanley testified that she had visited Braswell's home. Pictures from her visits in May and September 2023 were introduced without objection. She explained that the house did not have plumbing or running water. The shower was on the front porch, and one would have to walk through the shower area to enter the home. The home had an outhouse

consisting of a hospital chair with a bucket underneath. There was only one bedroom for the entire family, and there were environmental concerns inside and outside the home.

Braswell was the only other witness. He testified that he lived at the location shown in the pictures taken by Stanley since February or March 2023. Braswell always wanted to visit with his daughters but had issues that caused him to miss a few of those visits. One time, he asked DHS for transportation assistance, but the worker had been slow to reply. Braswell did not continue in counseling because the therapist had failed to contact him after informing him that sessions would be virtual. Braswell was arrested three times throughout the case and explained that his first arrest had resulted in a felony drug-possession charge. He pled guilty to the charge and was currently on probation. The second arrest was due to a warrant in connection to the felony drug-possession charge. The third arrest concerned the possession of marijuana.

Braswell testified that he tried to do everything on his own and did not want to ask for DHS to "do it for him." He loves his daughters and did not want his parental rights to be terminated. He believed that O'Neil had been a lot of the problem, and he had not been around her since their last arrest. Braswell did not think his current home was appropriate for his daughters.

At the end of the hearing, the court ruled that it was granting DHS's petition. A November 9 order set forth findings to support all the grounds pled by DHS. Braswell filed a timely notice of appeal, and his attorney has now filed a no-merit brief and motion to be relieved as counsel.

The only adverse ruling was the circuit court's termination decision. This court reviews termination-of-parental-rights cases de novo. *Lloyd v. Ark. Dep't of Hum. Servs.*, 2022 Ark. App. 461, at 7, 655 S.W.3d 534, 540. Termination requires a finding of at least one statutory ground and a finding that termination is in the child's best interest. *Id.* Arkansas Code Annotated section 9-27-341(b)(3) (Supp. 2023) requires a circuit court's order terminating parental rights to be based on clear and convincing evidence. *Lloyd*, 2022 Ark. App. 461, at 8, 655 S.W.3d at 540. Clear and convincing evidence is that degree of proof that will produce in the fact-finder a firm conviction as to the allegation sought to be established. *Barnett v. Ark. Dep't of Hum. Servs.*, 2023 Ark. App. 481. When the burden of proving a disputed fact is by clear and convincing evidence, the question that must be answered on appeal is whether the circuit court's finding was clearly erroneous. *Id.* A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. *Id.* This court gives a high level of deference to the circuit court because it is in a far superior position to observe the parties before it and to judge the credibility of the witnesses and the weight of the evidence. *Id.*

A court of competent jurisdiction may terminate parental rights when the parent is found to have subjected any juvenile to aggravated circumstances. Ark. Code Ann. § 9-27-341(b)(3)(B)(ix)*(a)(3)(A)*. As applied in this case, aggravated circumstances means that "a determination has been or is made by a judge that there is little likelihood that services to the family will result in successful reunification." *Id.* § 9-27-341(b)(3)(B)(ix)*(a)(3)(B)(i)*. To

7

prevail on this ground, DHS was required to demonstrate that if appropriate reunification services were provided, there is little likelihood that reunification could be achieved. *McCullar v. Ark. Dep't of Hum. Servs.*, 2024 Ark. App. 15, at 7, 683 S.W.3d 202, 208. A parent can create this type of aggravated circumstance by not following through with offers of assistance, by not completing basic goals of the case plan, and when there is a lack of significant progress on the parent's part. *Id.*

Here, the circuit court heard clear and convincing evidence to support the aggravated-circumstances ground. Braswell failed to comply with the case plan or show any progress toward reunification. While the case progressed to a trial home placement, it ended due to Braswell's failure to comply with the court orders and inability to meet his daughters' needs. After the trial home placement ended, he continued to be in noncompliance with the case plan and court orders and failed to attend the August 2023 permanency-planning hearing. He was arrested three separate times for offenses concerning illegal substances and at the time of the termination hearing had pled guilty to a charge of felony drug possession. He did not take advantage of DHS's offer to transport him to visitation, and as a result, he missed or was substantially late to more than one visit with his children. Importantly, Braswell admitted that his home was not safe or appropriate for his children, and he did not have a clear time frame or plan on when he would be able find one. Despite the provision of services for over a year and a half, at the time of the termination, hearing Braswell was in a worse position than he was when the case opened.

In completing a de novo review of the record, we hold that the circuit court's determination that there was little likelihood of successful reunification was not clearly erroneous. *See, e.g.*, *Cullum*, *supra* (father received various services but continued to test positive for drugs, suffer from housing instability, and have anger-management issues); *Kloss v. Ark. Dep't of Hum. Servs.*, 2019 Ark. App. 389, 585 S.W.3d 725 (despite services, father continued to test positive for drugs and failed to take advantage of therapy and counseling). Because only one ground listed in section 9-27-341(b)(3)(B) need be proved to support termination, there can be no meritorious argument for challenging the statutory-grounds findings of the court. *Kloss*, *supra*.

As for the best-interest finding, counsel argues that there was sufficient evidence to support the court's finding that termination was in the best interest of the children. When making the best-interest finding, a circuit court must consider (1) the likelihood that the child will be adopted if the termination petition is granted; and (2) the potential harm, specifically addressing the effect on the health and safety of the child, caused by returning the child to the custody of the parent. *Migues v. Ark. Dep't of Hum. Servs.*, 2019 Ark. App. 439, at 10, 586 S.W.3d 221, 227–28.

Here, Stanley, the case supervisor, testified that all the children are adoptable and that there are no barriers to adoption for any of the children, which supports an adoptability finding by the circuit court. *Cole v. Ark. Dep't of Hum. Servs.*, 2018 Ark. App. 121, at 6–7, 543 S.W.3d 540, 544.

As to potential harm, the circuit court is not required to find that actual harm would result or to affirmatively identify a potential harm. *Ross v. Ark. Dep't of Hum. Servs.*, 2017 Ark. App. 503, 529 S.W.3d 692. Potential harm must be viewed in broad terms, and "potential" necessarily means that the court is required to look to future possibilities. *Id.* We have held that continued drug use and instability demonstrate potential harm sufficient to support a best-interest finding in a termination-of-parental-rights case.

The circuit court was presented with sufficient evidence of potential harm, and the same facts that support the aggravated-circumstances finding support the court's potential-harm finding. Overall, Braswell could not demonstrate that at the time of the termination hearing he had achieved any stability. Counsel asserts that the circuit court's finding that the children would be at risk of potential harm if returned to him was not erroneous. We agree with this assessment and conclude that the evidence was sufficient to support the circuit court's best-interest analysis.

Counsel has complied with the dictates of *Linker-Flores* and the rules of this court, and we conclude that an appeal would be wholly frivolous in this case. Accordingly, we affirm the order and grant counsel's motion to withdraw from representation.

Affirmed; motion to withdraw granted.

HARRISON, C.J., and KLAPPENBACH, J., agree.

*Jennifer Oyler Olson*, Arkansas Commission for Parent Counsel, for appellant.

One brief only.

10