Cite as 2024 Ark. App. 450

# ARKANSAS COURT OF APPEALS
## DIVISION I

No. CV-24-268

|  |  |  |
|---|---|---|
| CECILIA ST. JOHN | | **Opinion Delivered** September 25, 2024 |
| | APPELLANT | APPEAL FROM THE JEFFERSON COUNTY CIRCUIT COURT [NO. 35JV-22-533] |
| V. | | |
| | | HONORABLE EARNEST E. BROWN, JR., JUDGE |
| ARKANSAS DEPARTMENT OF HUMAN SERVICES AND MINOR CHILD | | |
| | APPELLEES | AFFIRMED |

### RITA W. GRUBER, Judge

Cecilia St. John appeals the January 31, 2024 Jefferson County Circuit Court order terminating her parental rights to her minor child, MC. St. John does not challenge the sufficiency of the evidence supporting the circuit court's findings regarding the statutory grounds for termination, adoptability, or potential harm. Rather, St. John asserts that the circuit court abused its discretion when it denied her motion to continue the termination hearing. We affirm.

## I. *Background*

The Arkansas Department of Human Services (DHS) filed a petition for emergency custody and dependency-neglect on November 21, 2022, alleging that MC was dependent-

neglected on the basis of parental unfitness and neglect.[1] On November 22, the circuit court entered an order granting DHS's request for emergency custody. A probable-cause hearing was held that same day, and the circuit court found that probable cause existed for the emergency order to remain in place.[2]

The circuit court held the adjudication hearing on January 12, 2023, finding that MC was dependent-neglected due to inadequate supervision and parental drug use.[3] The circuit court further found that there was "not a non-custodial parent who is a legal parent of the juvenile but does not have custody." The court also found that it and DHS had been provided with the names of all the "adult grandparents and other adult relatives of" MC as well as "all legal putative fathers" of MC. The circuit court set a goal of reunification with a fit parent.

A review hearing was held on March 16, 2023.[4] The circuit court ordered that MC remain in DHS custody and continued the goal of reunification with a fit parent. The circuit court found that DHS had complied with the case plan and court orders and made

---

[1]This was due to St. John's ongoing methamphetamine use, her having an active warrant for probation violation, minimal food in the home, a previous true finding regarding St. John for failure to protect, and a recent incident in which MC, who was not quite two years old, was found unattended in the middle of a street.

[2]St. John was not present but was represented by counsel.

[3]St. John was again not present but was represented by counsel.

[4]St. John was once more not present but was represented by counsel.

reasonable efforts to provide services and finalize a permanency plan for MC. The court further found that St. John had not complied with the case plan or court orders.

A permanency-planning hearing was held on June 29, 2023.[5] The circuit court accepted DHS's recommendation that the goal of the case be changed to adoption, given St. John's failure to comply with court orders and the case plan as well as her failure to ever appear before the court or participate in DHS services. The circuit court found that aggravated circumstances existed and that there was little likelihood that services would result in a successful reunification. The court also found that DHS had made reasonable efforts to provide family services and had complied with the case plan and orders of the court.

On July 21, 2023, DHS filed a petition to terminate St. John's parental rights as well as all "known and unknown parents and putative parent's parental rights" to MC. The petition alleged four grounds in support of termination, none of which are at issue on appeal, and that termination would be in MC's best interest.[6] The petition set forth the circumstances under which MC came into DHS custody: St. John's near complete refusal to

---

[5]St. John was again absent but her attorney attended.

[6]The circuit court found that the following grounds, as alleged in DHS's petition, had been proved: (1) St. John had abandoned MC, *see* Ark. Code Ann. § 9-27-341(b)(3)(B)(iv) (Supp. 2023); (2) MC had been adjudicated dependent-neglected as a result of neglect that could endanger MC's life, *see id.* § 9-27-341(b)(3)(B)(vi); (3) St. John manifested an incapacity or indifference to remedy subsequent factors that arose since the inception of the case, *see id.* § 9-27-341(b)(3)(B)(vii)*(a)*; and (4) St. John subjected MC to aggravated circumstances with little likelihood of successful reunification despite services, *see id.* § 9-27-341(b)(3)(B)(ix)*(a)(3)(B)(i)*.

3

engage in DHS services; her arrest on December 19, 2022, on multiple charges; her avoiding DHS contact throughout the case; and her failure to exercise visitation with or provide any sort of support to MC.

The petition further set forth that MC had no known legal father, that paternity had not been judicially determined, that the putative-father registry had been searched with no information being located regarding MC or St. John, and that no putative father's rights had attached so that no putative father had proved any significant contacts with MC. The petition also set forth that St. John had stated she did not know the identity of MC's father or any putative father. On August 10, 2023, St. John answered the petition through counsel, generally denying the allegations contained therein.

The termination hearing was held on November 2, 2023. Counsel was present on St. John's behalf only, and St. John was present via Zoom. St. John's counsel requested a continuance, arguing that St. John had written a letter to the court stating that she was going to get out in January and planned to come to court and "get services." Counsel contended that St. John believed a man named James Thomas is MC's father; Thomas had come to the jail to visit St. John; Thomas would like a DNA test and services; and Thomas had repeatedly called DHS and left voicemails, but he was never able to reach anyone. Counsel argued that if the continuance were granted, then a DNA test could be performed, Thomas could receive services, and there would be no need to terminate St. John's rights since there would not be an adoption. The attorney ad litem opposed the request, pointing out that the case had been open for over a year; St. John had failed entirely to participate during the case; the alleged

father had never appeared for court, including that morning; and there was no legal father. The circuit court denied the continuance request, citing a lack of a good faith reason to grant it.

Family service worker (FSW) Makaylah Blackson testified regarding the circumstances under which MC came into DHS custody; St. John's complete lack of participation in the case; the services that had been offered to St. John and St. John's failure to engage in those services, including that St. John has had only one visitation with MC, which had occurred on December 5, 2022; St. John's lack of employment and income due to her incarceration; St. John's failure to provide any sort of resources for MC; and St. John's ongoing legal issues. Blackson confirmed that St. John did attempt to make contact once by writing a letter. Blackson stated that MC was receiving services, living in a pre-adoptive home, and doing well. Blackson explained that DHS was recommending termination because MC would be in danger if returned to St. John due to her failure to complete services, lack of housing, drug use, and ongoing incarceration.

Blackson testified that no putative father had contacted DHS, come forward, requested services, or requested visitation. Blackson did not know if a potential father had contacted the prior caseworker. Blackson confirmed that St. John had identified two men as potential fathers in a letter sent a month or two earlier—James Thomas and Jamar Hampton— and that both men had been referred by DHS for DNA testing. However, Blackson's attempts to contact each man had been unsuccessful. Blackson believed that DHS did seek relatives to place MC with but could not provide any specifics.

Adoption specialist Shirley Allen testified that MC is highly adoptable, that his current foster parent wishes to adopt him, and that to Allen's knowledge, no relative had expressed interest in adopting MC.

St. John testified next. She testified that during the life of the case, she was not incarcerated except "maybe a month or so." She testified that she and MC's father—James Thomas—made numerous attempts to contact DHS, but no one contacted them back. St. John confirmed that her attorney had told James Thomas the "address and everything, and the time" of the termination hearing, and she understood that the court denied the continuance request in part due to Thomas's absence at the termination hearing. St. John testified that she was "working on being bonded out right now" and planned to go straight into rehab once she got out in January. She went on to state that once out of rehab, she would contact DHS to do whatever she needed to do to get MC back. She testified that "miraculously," just before the Zoom hearing, her other child's father—whom she does not believe to be MC's father—called and said that he or someone on his side of the family was willing to take MC, but she had not yet had an opportunity to relay that information to her attorney. Among the exhibits entered into the record was MC's birth certificate, wherein the space for MC's father's name was blank.

The order terminating St. John's parental rights was entered on January 31, 2024. The circuit court found that DHS had proved all four grounds alleged in the termination petition and that termination was in MC's best interest, considering MC's adoptability as well as the potential harm to MC's health and safety if she were to be returned to St. John's

6

custody. The circuit court further found that DHS had made reasonable efforts and that the testimony of Blackston and Allen was credible. The order set out that MC had no known legal father, no known or unknown putative father whose rights have attached, and no judicial determination of paternity. Accordingly, the order terminated "parental rights between any known or unknown fathers and [MC]." This timely appeal followed.

## II.  *Standard of Review*

A motion for continuance shall be granted only upon a showing of good cause. *Grimwood v. Ark. Dep't of Hum. Servs.*, 2019 Ark. App. 417, at 3, 586 S.W.3d 667, 669. The appellant bears the burden of showing that the circuit court's denial of a continuance was an abuse of discretion, and to show an abuse of discretion, the appellant must show that she was prejudiced by the denial. *Id.* at 3–4, 586 S.W.3d at 670. A circuit court abuses its discretion when it acts improvidently and without due consideration. *Id.* To determine whether an appellant was prejudiced from the denial of a continuance, appellate courts may consider the appellant's history of compliance during the case. *See Wright v. Ark. Dep't of Hum. Servs.*, 2018 Ark. App. 503, at 9, 560 S.W.3d 827, 832. Lack of diligence by the moving party is sufficient reason to deny a motion for continuance. *Britt v. Ark. Dep't of Hum. Servs.*, 2022 Ark. App. 95, at 7–8, 640 S.W.3d 721, 726. Credibility determinations are within the circuit court's discretion, and appellate courts will not question those determinations on appeal. *Copp v. Ark. Dep't of Hum. Servs.*, 2023 Ark. App. 491, at 13, 679 S.W.3d 380, 390.

## III.  *Discussion*

On appeal, St. John does not challenge the circuit court's determination that DHS presented sufficient proof in support of the statutory grounds for termination, nor does she argue that there was insufficient evidence regarding either statutory prong––adoptability and potential harm––of the court's best-interest finding. These issues are therefore waived, and this court must affirm those findings. *See, e.g.*, *Benedict v. Ark. Dep't of Hum. Servs.*, 96 Ark. App. 395, 242 S.W.3d 305 (2006). Rather, St. John challenges the circuit court's best-interest determination as it relates to the denial of her motion to continue the termination hearing.

St. John argues that the circuit court erred in denying her motion because DHS failed to "make diligent efforts to identify putative parents in a dependency-neglect proceeding," including "without limitation checking the Putative Father Registry," as required by Arkansas Code Annotated section § 9-27-325 (n)(1)(A)–(B) (Supp. 2023). St. John further argues that the denial of her motion for continuance was in contravention of the circuit court's statutory obligation to "give preference to the least restrictive disposition consistent with the best interests and welfare of the juvenile and the public." Ark. Code Ann. § 9-27-329(d) (Repl. 2020).[7] She also argues that the circuit court erred in denying the motion to continue because a relative or fictive kin must "be given preferential consideration for placement . . . ." Ark. Code Ann. § 9-27-355(b)(1)(E)(i) (Supp. 2023).

St. John contends that she was prejudiced by the denial of her motion because if it had been granted, a legal father could have been established and a less restrictive disposition

___

[7]This is a dispositional alternative that is applicable at the adjudication stage—not termination.

option would have been available short of termination, possibly resulting in an entirely different outcome for her. St. John requests that this court reverse the denial of the continuance, the subsequent proceedings for termination be nullified, and the case be remanded for further proceedings.

St. John relies on *Hudgens v. Arkansas Department of Human Services*, 2010 Ark. App. 649, arguing that it stands for the proposition that a failure to comply with mandatory provisions of the law amounts to a denial of justice. In *Hudgens*, the appellant argued that the circuit court erred when it denied a parent's request for a continuance of an adjudication hearing that was being held prior to the expiration of the parent's time for filing an answer to DHS's complaint. This court reversed and held that because DHS did not proceed under the statute authorizing emergency orders, our rules of civil procedure required the circuit court to wait to conduct the hearing after the time for filing an answer had expired. *Id.* at 3. Although this court acknowledged that the circuit court's concern for the child was understandable, we held it was still erroneous to hear the petition at that time. *Id.*

St. John's arguments are unpersuasive. The circuit court did not abuse its discretion in denying St. John's motion for continuance. St. John had the burden to demonstrate good cause for the continuance she sought, and she failed to do so. Moreover, St. John cannot demonstrate prejudice from the circuit court's denial of her motion. She waited until the day of the termination hearing—more than a year into the case—to request a continuance on the basis that Thomas could be MC's father. That alone demonstrates a lack of diligence

9

sufficient to support the denial. *See Brown v. Ark. Dep't of Hum. Servs.*, 2016 Ark. App. 455, at 4.

The denial of her request for a continuance did not prejudice St. John. MC had been in DHS custody for over a year, St. John had contact with MC only once during the case, and she had not otherwise visited or provided support to MC. St. John did not provide adequate supervision of MC when in her custody and has a history of past and current drug use. St. John had been incarcerated during most of the case and was incarcerated on the date of the termination hearing. As such, she was and continues to be unable to adequately care, house, and supervise MC. St. John provided no testimony as to what efforts she made to achieve reunification while she was not incarcerated. She certainly did not contact DHS or visit MC. St. John had near complete noncompliance in this case. St. John's past behavior indicated that even if the court allowed a continuance, she was not likely to follow through with any of the steps necessary for reunification, particularly considering her history of noncompliance and nonparticipation throughout the case, near-continual incarceration, failure to complete services, and lack of housing or employment. *See Wright v. Ark. Dep't of Hum. Servs.*, 2018 Ark. App. 503, at 9, 560 S.W.3d 827, 832.

The FSW's credited testimony was that no unknown or putative parent had contact with or provided support to MC during the pendency of the case. St. John informed DHS at the outset of the case that she did not know the identity of MC's father. While St. John's counsel relayed that the putative father had been trying to get into contact with DHS—to no avail—counsel's statements and arguments are not evidence. *See, e.g.*, *Barnes v. Everett*, 351

Ark. 479, 490, 95 S.W.3d 740, 747 (2003). As to St. John's testimony that she and the putative father had been trying to contact DHS with no response, credibility determinations are for the circuit court. *See Copp*, *supra*. The information regarding a potential father was provided after MC had been in DHS custody for most of a year; nevertheless, DHS attempted to contact the individuals that St. John identified as putative fathers with no success, according to the credited testimony of Blackson. DHS did check the putative-father registry as required by Arkansas Code Annotated section 9-27-325, and no information regarding MC or St. John was found. The putative father failed to appear at the termination hearing, despite having been informed the previous day as to the hearing's time and location, according to St. John. St. John's arguments regarding a putative father are based on speculation about the identity of MC's father, the ability of this alleged father to prove paternity, and whether this alleged father or any of his relatives were appropriate to take custody of MC, as required by Arkansas Code Annotated section 9-27-329. Moreover, neither St. John nor her counsel may assert error on behalf of any putative father, and certainly there is no appeal or attempt to intervene by Thomas or any other person. *Kidd v. Ark. Dep't of Hum. Servs.*, 2016 Ark. App. 450, at 1–2.

Perhaps most importantly, the statutes relied on by St. John with respect to the preference for a relative or fictive kin and the least restrictive disposition requires that those preferences still be measured against the best interest of the child.[8] Here, no relative or fictive

---

[8]Again, Arkansas Code Annotated section 9-27-329 applies to the disposition after an adjudication hearing subsequent to a finding of dependency-neglect.

11

kin contacted DHS or appeared at any of the proceedings, including the termination proceedings. There was no evidence presented that any relative or fictive kin had had any contact or visitation with MC, let alone a preexisting relationship. *See Blankenship v. Ark. Dep't of Hum. Servs.*, 2023 Ark. App. 63, at 19, 661 S.W.3d 227, 228 (affirming circuit court's finding that termination was in the child's best interest when the child had never been in the relative's custody and there was no demonstration of a bond with the relative). MC is doing well in his foster-care placement, and his foster parent wishes to adopt him. Neither DHS nor the circuit court failed to comply with its statutory obligations. Thus, *Hudgens*, *supra*, is inapplicable herein.

Parental rights will not be enforced to the detriment or destruction of the health and well-being of the child. *Helms v. Ark. Dep't of Hum. Servs.*, 2023 Ark. App. 158, at 18, 662 S.W.3d 285, 291. The intent of the termination statute is "to provide permanency in a juvenile's life . . . in a reasonable period of time as viewed from the juvenile's perspective." Ark. Code Ann. § 9-27-341(a)(3). While the continuance may be in the best interest of St. John, she has failed entirely to demonstrate how the continuance would have been in MC's best interest. Accordingly, we hold that the circuit court's decision to deny St. John's request for a continuance was not an abuse of discretion. Thus, we affirm the denial of the request to continue and affirm the termination order.

Affirmed.

HARRISON, C.J., and THYER, J agree.

*Elizabeth James*, Arkansas Commission for Parent Counsel, for appellant.

*Ellen K. Howard*, Ark. Dep't of Human Services, Office of Chief Counsel, for appellee.

*Dana McClain*, attorney ad litem for minor child.