Cite as 2025 Ark. App. 137

# ARKANSAS COURT OF APPEALS

DIVISION II
No. CV-24-725

| | |
|---|---|
| | **Opinion Delivered** March 5, 2025 |
| BRIANNA BUTLER AND CHRISTOPHER BUTLER | |
| APPELLANTS | APPEAL FROM THE LOGAN COUNTY CIRCUIT COURT, SOUTHERN DISTRICT |
| V. | [NO. 42BJV-23-35] |
| ARKANSAS DEPARTMENT OF HUMAN SERVICES AND MINOR CHILDREN | HONORABLE TERRY SULLIVAN, JUDGE |
| APPELLEES | AFFIRMED |

### N. MARK KLAPPENBACH, Chief Judge

Brianna and Christopher Butler appeal from the order of the Logan County Circuit Court terminating their parental rights to their children. Both parents challenge the circuit court's ruling on an evidentiary objection and the finding that termination was in the children's best interest. Brianna also challenges the circuit court's denial of a motion to stay and a motion for a continuance. We affirm.

This case began in December 2023 when Brianna brought her eleven-year-old stepson, minor child three ("MC3"), to the hospital. MC3 was wheeled into the hospital covered with heated blankets and was unresponsive. Hospital personnel called the police because MC3 appeared to have suffered various forms of abuse. The doctor and nurse who treated him reported that MC3 was suffering from malnutrition, his body temperature was

only eighty-six degrees, and he had large bruises, open wounds, swollen legs, and burned hair. Brianna claimed that MC3 had been walking, talking, and eating the day before. MC3 was transferred to Arkansas Children's Hospital, which reported that he had been deprived of proper nutrition over a period of months and that he may have been restrained. His condition was classified as a "near fatality" because he would have been at risk for death without medical intervention.

The Arkansas Department of Human Services (DHS) exercised an emergency hold over MC3 and his half siblings, MC1 and MC2, ages six and five. Christopher is the father of all three children, and he and the children lived with Brianna, the mother of MC1 and MC2. MC3's biological mother, Amber Roberts, was living in Louisiana at the time of the abuse and had not seen MC3 for several months. Brianna and Christopher were arrested, and the circuit court ordered at the probable-cause hearing that they have no visitation.

At the adjudication hearing, the court admitted into evidence medical records, photographs taken of MC3 at the hospital, and videos from the family's home. The court found that it was the worst case of child abuse it had seen in twenty years on the bench and that MC3's physical condition and the videos were consistent with abuse perpetrated by Christopher and Brianna. The court found that MC1 and MC2 were exposed to the trauma as well because they were heard in the videos that showed MC3 being verbally and physically abused. The adjudication order stated that DHS intended to file a petition for no

2

reunification services, but until such petition could be heard, DHS was to provide any services that Brianna and Christopher requested.[1]

On March 8, 2024, Brianna's parents, Susan and Douglas Schuler, filed a motion to intervene. The Schulers lived in Virginia and sought intervention to file a petition for placement, custody, guardianship, or adoption. On March 19, the court heard DHS's petition for no reunification services and denied it upon finding that DHS had not furnished services that the parents had requested. The court ordered DHS to make referrals for parenting-without-violence and anger-management classes and ordered the parents to undergo psychological evaluations. At the March 19 hearing, the court set a termination-of-parental-rights hearing for July 16. The goal of the case was adoption for MC1 and MC2 and return of MC3 to the custody of his mother, Roberts. On March 21, the court authorized DHS to place MC3 with Roberts. The case was reviewed on June 4, and the court continued to deny visitation to the parents on the recommendation of MC1 and MC2's therapist.

The termination hearing was held on July 16. Dr. Karen Farst, the medical director of the Team for Children at Risk at the University of Arkansas for Medical Sciences, testified about her involvement in MC3's care at Arkansas Children's Hospital. She described his initial condition as very severe because he was dehydrated, was severely malnourished, and

---

[1]Brianna appealed the adjudication order. Her appellate counsel filed a no-merit brief, and in January 2025, the adjudication was affirmed. *See Butler v. Ark. Dep't of Hum. Servs.*, 2025 Ark. App. 5, 704 S.W.3d 326.

had altered mental status.  He was in the hospital for several days before he was fully awake and could have a conversation.  Dr. Farst testified that his maltreatment was a near-fatality event because he would not have survived without medical care.  MC3 was diagnosed with pneumonia and a skin infection called cellulitis.  He was also found to have injuries to his intestines and liver that were consistent with physical abuse.  Injuries on his knees, hips, and toes were consistent with being confined to a kneeling position.  He required very intensive management with IV fluid rehydration, tube feeding, antibiotics, and wound care.   In addition to the physical abuse, Dr. Farst testified that MC3 suffered from medical neglect; he had been in need of medical care for quite some time before he was brought in for care.  When MC3 was admitted to the hospital on December 22, 2023, he weighed just 67 pounds and had a protruding ribcage and collarbone.  Medical records showed that he had weighed 79 pounds more than a year earlier.  MC3 was discharged on January 5, 2024, and when Dr. Farst followed up with him in February, he weighed 86 pounds.  Dr. Farst testified that MC1 and MC2 also suffered maltreatment from watching the parents' victimization of MC3.

Investigator Kody Smith of the Booneville Police Department testified that he responded to the Booneville hospital after Brianna brought MC3 in.  Smith took photographs of MC3 that were admitted into evidence and showed bruises and sores, protruding ribs, and swollen hands and legs.  Smith testified that he discovered videos of abuse on the parents' phones after their arrest.  Seventeen video clips were admitted into evidence, including clips showing Brianna striking MC3, violently shaking his head, and placing her foot on his head while cursing at him.  Numerous videos showed MC3 being

4

made to do jumping jacks while crying and appearing frail. The other children could be seen and heard in the background of several videos, and one child was asked to report on MC3's jumping jacks.

Holley Zarlingo testified that she had been Brianna's therapist since before this case began, and Christopher started seeing her in January 2024. Zarlingo testified that she was mostly dealing with the parents' PTSD from childhood, and they had not discussed the case at the direction of their criminal attorneys. She said that Brianna had reported that the children were in foster care because MC3's foot became infected, and they had lost their Medicaid. Zarlingo said that Brianna was upset and sad, but neither parent had expressed feelings of guilt regarding the case.

Pamela Feemster, the Logan County supervisor for the Division of Children and Family Services, testified that the parents had participated in parenting, anger-management, and domestic-violence classes, but she opined that "all the parenting classes in the world" were not going to fix the issues here. She noted that the parents had previously completed an intensive parenting course through a prior protective-services case. Feemster did not believe that continued services would result in reunification, and the parents still had pending felony charges. She said that the parents had twice refused to schedule a psychological evaluation on the advice of their criminal attorneys. Feemster said that MC3 was thriving and weighed 109 pounds and that MC1 and MC2 had no barriers to adoption. Raelyn Shook, adoption supervisor, also testified that they are adoptable.

The circuit court found by clear and convincing evidence that termination was in the children's best interest and that DHS had proved multiple statutory grounds for termination, including that the court had found the juvenile or a sibling dependent-neglected as a result of neglect or abuse that could endanger the life of the child, any of which was perpetrated by the juvenile's parent or stepparent. Ark. Code Ann. § 9-27-341(b)(3)(B)(vi)(a) (Supp. 2023). The statute provides that such a finding constitutes grounds for immediate termination of the parental rights of one or both of the parents. Ark. Code Ann. § 9-27-341(b)(3)(B)(vi)(b).

I. *Rule 88 Violation*

While DHS counsel was preparing for Dr. Farst to testify by Zoom, Brianna objected, stating, "I don't know that we were even asked if it was okay if she appear by ~ via Zoom or whether we object. So I'm noting an objection for the record." The objection was denied. On appeal, Christopher and Brianna argue that it was erroneous for the circuit court to allow Dr. Farst to testify by Zoom when DHS had failed to follow the notice requirements set forth in Arkansas Rule of Civil Procedure 88. Rule 88 allows for hearing participants to participate via electronic means, provided the court determines certain safeguards are met. Any party may move the court to conduct virtual or blended proceedings, but (1) the motion must set forth how the safeguards in subsection (b) of the rule are to be met, and (2) the motion may not be granted absent an opportunity for all parties to respond and be heard. Ark. R. Civ. P. 88(d)(2).

We decline to address Christopher's argument because it is not preserved for appeal. Although Brianna's attorney lodged an objection to Dr. Farst testifying via Zoom, Christopher did not join the objection. A party is bound by the scope of the arguments made to the circuit court. *Williams v. Ark. Dep't of Hum. Servs.*, 2019 Ark. App. 280, 577 S.W.3d 402.

Regardless of whether a Rule 88 violation occurred, we hold that Brianna cannot demonstrate prejudice. A mere showing that the circuit court erroneously admitted evidence will not support a reversal absent a showing of prejudice. *Hooks v. Ark. Dep't of Hum. Servs.*, 2017 Ark. App. 687, 536 S.W.3d 666. MC3's medical records were admitted into evidence before Dr. Farst was called to testify. These records contain the same evidence that was admitted through Dr. Farst's testimony. When evidence is improperly admitted but the same evidence is admitted through another source, there is no reversible error. *Id.* Furthermore, photographs and videos evidencing MC3's abuse were admitted through another witness, Investigator Smith. Finally, Dr. Farst had previously testified at the adjudication hearing, and the court credited her testimony in finding that the parents had perpetrated abuse that endangered MC3's life. The findings of previous hearings are elements of subsequent hearings. *Neves da Rocha v. Ark. Dep't of Hum. Servs.*, 93 Ark. App. 386, 219 S.W.3d 660 (2005); *see also Hooks*, *supra* (noting that the evidence had been introduced at an earlier hearing). Accordingly, Brianna cannot demonstrate prejudice.

II. *Best Interest*

7

We review termination-of-parental-rights cases de novo. *Blankenship v. Ark. Dep't of Hum. Servs.*, 2023 Ark. App. 63, 661 S.W.3d 227. At least one statutory ground must exist in addition to a finding that it is in the child's best interest to terminate parental rights; these must be proved by clear and convincing evidence. Ark. Code Ann. § 9-27-341. The appellate inquiry is whether the circuit court's finding that the disputed fact was proved by clear and convincing evidence is clearly erroneous. *Blankenship*, *supra*.

Christopher and Brianna both concede that there was sufficient evidence of the "endanger the life" ground to support termination of their rights to all three children. However, they both challenge the court's finding that termination was in the children's best interest without first deciding the grandparents' petition for placement. They argue that once termination occurs, the grandparents' biological relationship to the children is severed, and they will be denied the preferential consideration for placement afforded to relatives by statute. The parents argue that this case is akin to *Borah v. Arkansas Department of Human Services*, 2020 Ark. App. 491, 612 S.W.3d 749, and *Clark v. Arkansas Department of Human Services*, 2019 Ark. App. 223, 575 S.W.3d 578, where they say termination was reversed for the court's failure to consider placement with relatives.

We hold that these cases are distinguishable. In *Clark*, the circuit court expressly declined to place the children with their grandparents in favor of pursuing adoption with the foster parents. This court found, among other errors, that the circuit court's best-interest determination was grounded in clearly erroneous factual findings, including the finding that the grandparents did not put forth the effort to be involved in the case. This court also

8

noted that the grandparents were not parties to the case and would not have standing to intervene as a matter of right in a subsequent adoption proceeding should the termination be affirmed. In *Borah*, the evidence showed that the grandmother had made numerous attempts to become a placement option at various stages of the case over the course of several months before DHS took any action on her requests. The grandmother testified that she had a good relationship with the child.

Here, unlike in *Borah*, DHS's witness, Feemster, testified that she spoke with the grandparents around the first of January, shortly after the case began, and submitted the ICPC packet in February. The grandparents filed a motion to intervene in March. Although Christopher claims that the court did not rule on the grandparents' intervention until after the termination hearing, the transcript reveals that intervention was granted at the beginning of the termination hearing. The grandparents' counsel requested an opportunity to present their petition at the appropriate time after the ICPC home study was completed. Evidence at the termination hearing about the children's potential adoption was limited to testimony that they are adoptable, but they were not in a "foster-adopt home." The grandparents were not called to testify, and there was no evidence introduced regarding whether they had any relationship with the children. Unlike in *Clark*, the circuit court made no erroneous findings regarding the grandparents' efforts and did not find that the children should not be placed with them. In its oral ruling, the court stated that it was going to "keep an open mind" as to the grandparents and await receipt of the ICPC.

9

We hold that this case is more analogous to *Blankenship*, *supra*, where the relatives had met the child only once, and the circuit court acknowledged their interest in placement, but the court chose the child's need for permanency over further delaying the case and noted that termination was necessary for either the relatives or the foster parents to adopt the child. Although the statutory preferences list "authorizing a plan to obtain a guardianship or adoption with a fit and willing relative" before authorizing a plan for adoption, the relative preference outlined in the statute must be balanced with the individual facts of each case. *Robinson v. Ark. Dep't of Hum. Servs.*, 2024 Ark. App. 64, 684 S.W.3d 219. Here, the children were never in the relatives' custody, and there was not yet a determination that the relatives were fit to become guardians or adoptive parents. Despite the parents' arguments that they were complying with the case plan, the parents had committed abuse that warranted "immediate termination," and their actions supported the finding that termination was in the children's best interest.

Christopher also argues that it was erroneous to terminate his parental rights to MC3 because permanency was already achieved for him through placement with his biological mother. We disagree. In *Cox v. Arkansas Department of Human Services*, 2015 Ark. App. 202, 462 S.W.3d 670, the appellant argued that it was not necessary to terminate his rights since the plan for the children was to be returned to the custody of their mother. This court held that the facts of the case warranted termination, noting that appellant had sexually abused his children's half sibling and had given her alcohol resulting in a life-threatening situation.

The abuse and neglect here, which created a life-endangering situation, similarly warrant the termination of Christopher's rights to MC3 despite his placement with his mother.

Brianna additionally argues that Feemster's sparse testimony—merely answering in the affirmative when asked if it was in the children's best interest to terminate—does not rise to the level of clear and convincing evidence. However, Brianna cites no authority for her suggestion that multiple witnesses are required to expound on why termination is in the children's best interest. In this case, the testimony given by Dr. Farst and Investigator Smith as well as the medical records, photographs, and videos established by clear and convincing evidence that termination was in the children's best interest. It was not necessary to have DHS personnel testify that this was their belief for the court to so find. Accordingly, we hold that the court's best-interest finding was not clearly erroneous.

III. *Motion to Stay*

In June 2024, Brianna filed a motion requesting that the court enter an order staying the termination hearing. She argued that the circuit court had no jurisdiction to enter a termination order until her appeal of the adjudication order was decided. The circuit court denied the motion.

On appeal, Brianna maintains that the circuit court lacked jurisdiction to enter a termination order until the adjudication appeal was concluded and a mandate issued. We disagree. The juvenile code provides that, "[p]ending an appeal from any case involving a juvenile out-of-home placement, the juvenile division of circuit court retains jurisdiction to conduct further hearings." Ark. Code Ann. § 9-27-343(c) (Repl. 2020). The supreme court

11

has held that, pursuant to this statute, a circuit court retains jurisdiction to proceed with a termination hearing and enter a termination order even when a parent has a pending appeal from an adjudication order. *Harwell-Williams v. Ark. Dep't of Hum. Servs.*, 368 Ark. 183, 243 S.W.3d 898 (2006). Accordingly, Brianna's argument is without merit.

## IV. *Motion to Continue*

Brianna made an oral motion to continue at the beginning of the termination hearing. She argued, in part, that the case should be continued because the grandparents' petition for placement should be heard before their status as relatives is potentially terminated. The circuit court denied the motion, noting that the hearing had been set for months, that witnesses were present, and that it would be months before it could be heard again. On appeal, Brianna argues that the hearing should have been continued to allow for the relative-placement process to be completed. She contends that the entire family was prejudiced by the denial of her motion for a continuance.

A motion for continuance shall be granted only upon a showing of good cause. *St. John v. Ark. Dep't of Hum. Servs.*, 2024 Ark. App. 450, 700 S.W.3d 197. The appellant bears the burden of showing that the circuit court's denial of a continuance was an abuse of discretion, and to show an abuse of discretion, the appellant must show that she was prejudiced by the denial. *Id.* A circuit court abuses its discretion when it acts improvidently and without due consideration. *Id.*

The grandparents' motion to intervene and file their petition for placement, custody, guardianship, or adoption was filed on March 8, 2024. The termination hearing was

12

scheduled at the March 19 hearing. Despite knowledge of the grandparents' intentions, Brianna waited four months until the day of the termination hearing to argue that the grandparents' petition should be heard first. Lack of diligence by the moving party is sufficient reason to deny a motion for continuance. *St. John*, *supra*. In *Blankenship*, *supra*, we affirmed the denial of the parents' motion for a continuance to allow time for the written ICPC report to become available, noting in part that they had failed to move for a continuance before the termination hearing despite knowledge of the circumstances. Furthermore, as in *Blankenship*, the circuit court here was aware that the ICPC report was forthcoming but chose the children's need for permanency over continuing the case. Here, when Brianna moved for a continuance, the court had no evidence before it that the grandparents were fit to care for the children. Under these circumstances, we cannot say that the circuit court abused its discretion in denying the motion for a continuance.

Affirmed.

BARRETT and WOOD, JJ., agree.

*Dusti Standridge*, for separate appellant Christopher Butler.
*Kimberly Eden*, for separate appellant Brianna Butler.
*Ellen K. Howard*, Ark. Dep't of Human Services, Office of Chief Counsel, for appellee.
*Dana McClain*, attorney ad litem for minor children.